UNITED STATES, Appellant

v.

RAYMOND CALVIN ROBINSON, Personnelman Second Class, U. S. Navy, Appellee

(4 USCMA 12, 15 CMR 12)

No. 3842

Decided March 12, 1954

LCDR H. D. Golds, USNR, for Appellant.
LCDR Franklin P. Gould, USNR, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

This case is before us on a certificate from The Judge Advocate General of the Navy pursuant to the Uniform Code of Military Justice, Article 67(b)(2), 50 USC § 654. He requests our consideration of the decision of the board of review which holds a portion of the sentence imposed on the accused to be illegal. The issue arises out of the following facts and circumstances. The court-martial had heard the evidence on the merits of the case and had found the accused guilty of larceny and forgery.

Evidence in mitigation was received and the court-martial closed to arrive at a sentence. Thereafter, the court-martial reopened and the following events, which we extract verbatim from the record, transpired:

"PRESIDENT: Robinson, it is my duty as President of this court to inform you that the court in closed session and upon secret written ballot, two-thirds of the members present at the time the vote was taken concurring, sentences you: To be reduced to the grade of seaman recruit, to be discharged from the service with a bad conduct discharge, to forfeit $58.80 for three years and to be confined at hard labor for three years.

The court will adjourn awaiting the call of the President.

The court adjourned at 1418 hours, 7 July 1953.

The court opened at 1420 hours, 7 July 1953.

"PRESIDENT: The court will come to order.

"TRIAL COUNSEL: All parties to the trial who were present when the court adjourned are again present.

"PRESIDENT: The President wishes to announce for the record that in announcing the sentence of the court, the President did not correctly announce the sentence which the court adjudged. Therefore, the President wishes the record to show that his last announcement was in error and I wish the law officer's approval of my resentencing the accused.

"DEFENSE COUNSEL: Sir, do you wish the accused to remain standing?

"PRESIDENT: You may be seated. This is not a case, I believe, Mr. Law Officer, where it is necessary for the court to revoke its former sentence because the court was correct. The President's announcement was all that was in error.

"LAW OFFICER: It was in the nature then, Mr. President, of a clerical error.

"PRESIDENT: Clerical error plus a verbal error on my part.

"LAW OFFICER: You may proceed with the correct sentencing.

"PRESIDENT: Will the accused and his counsel come forward, please?

Robinson, it is my duty as President of this court to inform you that the court in closed session and upon secret written ballot, two-thirds of the members present at the time the vote was taken concurring, sentences you: To be reduced to the grade of seaman recruit, to be discharged from the service with a bad conduct discharge, to forfeit $58.80 per month for a period of three years, and to be confined at hard labor for three years."

A comparison of the two statements reveals that the last sentence announced is in terms which forfeit $58.80 each month for thirty-six months of confinement, whereas the sentence as first pronounced imposed a total forfeiture of $58.80. The difference in amount is substantial, and so the question of the power to correct the sentence becomes of moment.

The procedure to be followed in military trials when announcing the sentence has been set out in the Manual for Courts-Martial, United States, 1951, paragraph 76c, page 124, and the wording is as follows:

"*Announcing sentence.*—As soon as it has determined the sentence, the president will announce the sentence in open court in the presence of the law officer, the accused, and counsel for both sides. Only the required percentage of members who concurred in the sentence should be announced. If the law officer of a general court-martial notes any ambiguity or apparent illegality in the sentence as announced by the court, he should bring the irregularity to the attention of the court so that it may close to reconsider and correct the sentence. The court may not, however, reconsider the sentence with a view to increasing its severity after the sentence has been announced unless the sentence prescribed for the offense of which the accused has been convicted is mandatory (Art. 62b). In a trial by special court-martial, an ambiguous or apparently illegal sentence may be called to the attention of the court by the trial counsel.

"Within the limitations prescribed in this paragraph, the court may re-

consider a sentence on its own motion at any time before the record of trial has been authenticated and transmitted to the convening authority. In such a case, however, all personnel of the court, the accused, counsel for both sides and, in a general court-martial, the law officer must be present."

The board of review concluded that the court-martial had, contrary to the foregoing paragraph, improperly increased the severity of the sentence after a valid and unambiguous legal sentence had been announced. It concluded further that an inadvertent mistake in the announcement of a sentence could be corrected by a court-martial only prior to its adjournment. Therefore, it rendered a decision holding that the sentence as first announced was the valid and enforceable sentence in the case.

In the instant case the president of the court-martial, within a matter of seconds, characterized his announcement of the sentence as verbally erroneous and the statement was unchallenged by any member of the court-martial. The board of review reasoned from those premises that the president's statement was accurate, and accused has conceded before this court that he must rely on a mere "slip-of-the-tongue" error. Under those circumstances we have no difficulty concluding that there was not a reconsideration of the sentence in this case. A reconsideration involves something more than a change in phraseology necessary to express truly the sentence actually agreed upon and that is all we have here. A procedure cannot be made so technical and inflexible that a court-martial is denied the power to correct a sentence inadvertently pronounced unless the correction in a material way clashes with the rule of being twice punished for the same offense.

In United States v. Downs, 4 USCMA 8, 15 CMR 8, we had occasion to hold that a court-martial may properly correct an erroneous announcement of its decision so as to cause it to conform to the true findings. Much of what we said in that opinion is applicable here. In our view, a correction such as the one made there did not amount to a reconsideration of a finding of not guilty and that is likewise true here. However, in that case we were not called upon to decide whether the fact that an adjournment had been ordered prior to the discovery of the error would prohibit the court-martial from correcting the error. This case presents that problem.

In the Federal courts, the pronouncement of sentence constitutes the judgment of the court. Ex parte Lange, 85 US 163, 21 L ed 872 (1874); United States v. Benz, 282 US 304, 75 L ed 354, 51 S Ct 113 (1931). Prior to March 21, 1946, it was their rule that jurisdiction over the cause to make corrections in the judgment was retained by the court for the remainder of the term. United States v. Benz, supra; United States v. Murray, 275 US 347, 72 L ed 309, 48 S Ct 146 (1928). On that day by rule, the power to correct an illegal sentence was not restricted, the power to reduce a sentence was extended for sixty days after imposition of the sentence, but nothing was said about any power to increase a sentence. Federal Rules of Criminal Procedure, Rules 35, 45.

Undoubtedly the Federal rule did not cover cases where the court attempted to increase the sentence because the power to do that must be measured by constitution limitations. Under interpretations by the United States Supreme Court, the Fifth Amendment to the Constitution operates to prohibit a change in the sentence which would increase the severity of the penalty. In Ex parte Lange, supra, the lower court attempted to increase a sentence after it was partly served and that court held the second sentence invalid because it subjected the defendant to double punishment for the same offense. It is important to note that the rule was not based on lack of authority but on the infringement of a constitutional right. United States v. Benz, supra. We are mindful that the military prohibition against double punishment for one offense flows from Article 44, Uniform Code of Military Justice, 50 USC § 619, but we regard the rationale of the Fed-

**15**

eral authorities as persuasive in this field even though, in the military, jeopardy may attach at a different time. Certainly there can be serious abuses in a proceeding which would permit a judge to change his mind and increase a sentence after the defendant has once been legally sentenced and this injustice is present in both civilian and military systems. However, the Federal courts have weighed the potentialities for harm against the necessity of permitting a court to correct errors and have reached the conclusion that the Fifth Amendment does not go so far as to prevent a court from taking corrective measures if the defendant has not commenced to serve his sentence. There is more reason to use that rule in the military because the president of a court-martial is only the spokesman for the court-martial members and there is more likelihood that inadvertence will creep in when he announces their sentence than when a judge alone deals with the subject. Moreover, there is little chance of prejudicing the accused by using this procedure as a ruse to increase punishment as all members of the court are available for questioning purposes.

While there have been a number of cases reaching appellate Federal courts in which this particular question has been in issue, we quote from one which answers completely the relevant questions. In Rowley v. Welch, 114 F2d 499 (CA DC Cir 1940), after the trial judge had imposed sentence, the defendant was escorted from the courtroom and left standing in the elevator for a period of not more than one-half hour. He was then returned to the courtroom and the judge stated he had made a mistake in announcing that the sentences on the several counts would run concurrently when he had intended to have them run consecutively. He directed the clerk to change the record so that the sentences would run as he had intended. That case is on all fours with the present action particularly with reference to the fact that the inadvertent announcement was a slip of the tongue. Mr. Justice Rutledge, speaking for the United States Court of Appeals for the District of Columbia, stated as follows:

". . . Consequently we are not required to decide whether a court having once pronounced sentence in accordance with its true intent and purpose can change it later in such manner as to increase the penalty, whether before or after service of the sentence begins. The question is whether such a change can be made, if done promptly, in order to correct a sentence inadvertently pronounced and make it speak the true intention of the court.    •    •    •    •    •    •

". . . Entirely apart from specific constitutional limitations, therefore, there is nothing in the nature of mere oral pronouncement of sentence, judgmental in character though that act may be, which gives it absolutely unalterable quality.

"Nor do we think the Fifth Amendment gives it such consummate finality that the court is precluded from correcting an inadvertent pronouncement, even by increasing the penalty, provided the change is made as promptly as was done in this case. Appellant's view, carried to its logical extreme, would prevent a correction of mere inadvertence at any time after it occurs, even in the next breath. So construed, the Amendment would embalm into constitutional right an act of pure inadvertence, although every consideration of justice and its proper administration requires that this most solemn judicial step be taken with no taint of accident or inattention, but with the utmost deliberation and presence of mind. Courts, being human, cannot avoid occasional lapses characteristic of humanity, nor can the Constitution prevent them. It can only guard against their consequences. But it would not do so by perpetuating or making them inescapable."

Conceding we have different influences operating in the military system and that we should be ever vigilant to prevent abuses, we are not compelled to hold that the mere oral pronouncement of the words by the president of the court is a final and irrevocable find-

ing which becomes untouchable when uttered. If correction is to be permitted then there must be some point between the pronouncement and execution of the sentence when jeopardy should attach and prevent the correction of the sentence so as to increase it. There are two well identifiable stopping points in the proceedings which might be selected, absent influence on the court. These are the time when the accused is delivered to the stockade for the purpose of serving his sentence and the time when the record is authenticated. However, we need not fix the precise terminal point in this case, as neither of the two stopping points had been reached. Presently we need go no further than to hold that the correction can be effected if the accused, his counsel and the court members have not departed from the courtroom. If the proceedings have not proceeded beyond that point, the accused cannot have started serving his sentence. Any contention that such a rule would be subject to abuse hardly bears answering. No external influences could be brought to bear against the court members and the possibility that they might have had a change of heart and decided to increase the punishment is nonexistent. The only argument by which the accused can assert he has been harmed is founded on the false premise that he heard the first pronouncement and he is entitled to the benefit of the misspoken words. That reason is not sufficient to overshadow the necessity for adopting rules which give some consideration to human lapses. As was said in Rowley v. Welch, supra:

"... The Amendment contemplates the protection of two interests. It looks of course to the protection of the person charged with crime. But it does not require this at the cost of ignoring entirely the interest of the community in protection from criminal activities. The former should not be whittled away by judicial decisions which permit substantial invasions of the rights to be punished only once for a single offense and to be free from substantial jeopardy of second punishment for it. Neither should the latter be whittled down by making of the conception of jeopardy a highly technical idea unrelated to the substance, immediacy and inescapability of the threat of double punishment."

Testing the principles herein set forth by the facts of this case, we must conclude the board of review erred when it decided that the corrected sentence was illegal. The accused and his counsel were present in court when the first pronouncement was made, they were present when it was corrected, and the record shows that only two minutes elapsed between the two announcements. It is distinctly improbable that they or the court-martial members were out of each other's presence; and the time interval would not have permitted the accused to have left the area of the courtroom. While Article 57 of the Uniform Code of Military Justice, 50 USC § 638, provides that any period of confinement shall begin to run from the date sentence is adjudged, it is certain that actual service could not commence until accused was returned to the stockade. Therefore, on no realistic basis could it be said that anything had transpired to change the status of accused and to divest the court-martial of its power to express properly the true sentence it imposed.

The question certified by The Judge Advocate General of the Navy is answered in the affirmative. The record is returned to him for reference to a board of review for action not inconsistent with this opinion.

Judge BROSMAN concurs.

Chief Judge QUINN concurs in the result.