UNITED STATES, Appellee

v

LEONARD D. REAMS, Aviation Electronicsman First Class, U. S. Navy, Appellant

9 USCMA 696, 26 CMR 476

No. 11,299

Decided October 3, 1958

Lieutenant (jg) Charles D. Hawley, USNR, argued the cause for Appellant, Accused.

Major Charles R. Larouche, USMC, argued the cause for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was charged in separate specifications with stealing varying sums of money on seven different occasions, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. These larcenies were also made the subject of seven other specifications charging that in five instances his acts constituted conduct violative of Article 134, Uniform Code of Military Justice, 10 USC § 934, and that on the remaining two occasions he had committed offenses in contravention of Article 132,

Uniform Code of Military Justice, 10 USC § 932, prohibiting the making of false claims against the United States. Arraigned before a general court-martial, he pleaded guilty to the fourteen specifications and to two other offenses in violation of Article 107, Uniform Code of Military Justice, 10 USC § 907. Before the court retired to deliberate upon sentence, defense counsel brought out the fact that each larceny offense had been duplicated on the charge sheet as a violation also of either Article 134 or Article 132 of the Code,

supra, and asked that the court be instructed upon multiplicity. The law officer refused and instructed the court members that the maximum punishment they could impose was a dishonorable discharge, total forfeitures, and confinement at hard labor for twenty-five and one-half years, with reduction to the lowest enlisted pay grade. The court-martial returned a sentence of dishonorable discharge, total forfeitures, confinement at hard labor for two years, and reduction in rank to airman recruit. The convening authority, pursuant to a pretrial agreement with the accused, approved only a sentence of a bad-conduct discharge, total forfeitures, confinement at hard labor for nine months, and reduction in grade. He also recommended to appropriate authorities that suspension of the punitive discharge be considered should the accused demonstrate a motivation toward restoration while in confinement. The board of review affirmed without opinion, and this Court granted accused's petition for review to consider two questions, the first of which is whether the law officer committed prejudicial error in denying defense counsel's request for an instruction on the effect of multiplicious specifications on the sentence.

We are concerned solely with the confinement aspect of the sentence, so we will deal with that ingredient only. The seven larceny specifications alone warranted a maximum imposable punishment of confinement at hard labor for thirteen and one-half years. The Article 132 and Article 107 offenses would add twelve years to the forfeitures and confinement portions of that sentence. This totals the maximum sentence the law officer instructed the court it could impose, and so we may assume he concluded the five specifications laid under Article 134 were multiplicious. However, the two specifications alleging offenses in violation of Article 132, supra, indicate the accused's presentation of fraudulent claims were each for the same amount, on the same date, at the same place, and perpetrated upon the same victim as an offense spelled out in one of the larceny specifications. In United States v

Rosen, 9 USCMA 175, 25 CMR 437, this Court held that in such a situation each larceny and fraudulent claim transaction was a single offense for purposes of punishment. See also United States v Smith, 7 USCMA 102, 21 CMR 228. After making an adjustment for that duplication, we find the law officer's instruction exceeded by ten years the maximum confinement imposable. However, we note the court adjudged a sentence of only two years' confinement—less than one-seventh of the legal maximum—and the convening authority's action more than halved the severity of that sentence. Comparing the accused's sentence as it now stands with the maximum authorized, and taking into account the number and seriousness of the offenses committed, the law officer's instructional error "is too slight to justify remand of the case for reassessment of the sentence." United States v Teitsort, 9 USCMA 322, 26 CMR 102.

The second issue is whether the specifications alleging that the accused had made false official statements to his superiors, in violation of Article 107, supra, state an offense under the Uniform Code. The first specification alleged that the accused, with intent to deceive, had made an official statement to the legal officer of the Naval Station to which he was attached, to wit: that he had paid a debt to a civilian creditor, and that the statement was wholly false and then known by the accused to be false. The second specification states that subsequently, with intent to deceive and with knowledge of its falsity, the accused had made a similarly false statement to his commanding officer concerning his payment of another debt owed to a Naval exchange.

Appellate defense counsel contends the facts pleaded cannot support the legal conclusion that accused's statements were official within the meaning of Article 107, supra, since the accused was under no duty to make true statements to the officers involved about his payment of personal debts. Admittedly, there are circumstances under which military superiors have no authority to scrutinize the personal financial affairs of those in their command, United States v Milldebrandt, 8

USCMA 635, 25 CMR 139. That decision, however, does not set forth the test of the sufficiency of a specification to state an offense. The proper standard may be found in United States v Sell, 3 USCMA 202, 11 CMR 202, where we stated, "when the pleadings have not been attacked prior to findings and sentence, it is enough to withstand a broadside charge that they do not state an offense, if the necessary facts appear in any form or by fair construction can be found within the terms of the specification." See also United States v Petree, 8 USCMA 9, 23 CMR 233; United States v Fout, 3 USCMA 565, 13 CMR 121.

Using that test, the question narrows to this: Must an accused, if he elects to speak after warning, answer truthfully when his military superiors inquire into the matter of his payment of personal debts to a military exchange or to any other business establishment? Certainly, when complaints from creditors of a serviceman reach the ears of those in authority, they have a duty both to the alleged debtor and to the military community as a whole to determine whether the indebtedness was justly incurred. If it was not, the serviceman should be afforded the assistance of some officer of the command. If it was and the debtor is in default, he should be aided and advised in making arrangements satisfactory to the creditor. The necessity at times of such official concern with the financial responsibility of servicemen was acknowledged by this Court in United States v Kirksey, 6 USCMA 556, 20 CMR 272, in which we rationalized that:

". . . Since the military establishment is composed in large part of transient—often unselected—personnel removed from the customary restraints of civilian society, it is readily apparent that resolute measures are required to insure the prompt liquidation of fiscal obligations. Civil suits are always difficult in such a setting, and are seldom effective against service personnel, who may be found within the jurisdiction of local courts at one time and far removed therefrom at another shortly thereafter. Indeed, if normal civil processes constituted the sole remedies available to creditors of military people, it is conceivable, at least, that an unscrupulous soldier, sailor or airman calculatedly might amass substantial liabilities in advance of impending transfer, and—on completion of the movement—find himself immune from civil action for all practical purposes. Moreover, members of the military community—easily identified through the wearing of the uniform—are inevitably grouped in the public mind as a class—with the result that a failure by one to discharge monetary responsibilities tends to brand all not only as criminal persons, but as poor credit risks as well, in the eyes of the civilian population. Too, the ancient ethical traditions of the profession of arms cannot safely be left out of account in this connection. Historically, of course, these moral customs have possessed a particularly binding force in the case of commissioned officers—but they have not at all been rejected in that of enlisted personnel. And they have always dictated a high standard of promissory responsibility."

Furthermore, in that case it was held that "a failure to discharge obligations *when characterized by a certain culpable type of motivation* may result in court-martial charges against the debtor," while a mere negligent omission to cancel his just debts will not render a serviceman criminally liable. Because of the mentioned peculiarities of the service and the necessity of the public having faith and confidence in its armed forces, this Court has recognized that the serviceman's financial irresponsibility is an appropriate matter for command concern. Much damage would be inflicted unless those in the service who should be helped in their financial transactions deal honestly with commanders.

Within the confines of these specifications, the accused was alleged to have falsely, and with intent to deceive, stated to his superiors involved in an official

**699**

investigation that he had paid his debts to a Naval exchange and a civilian place of business. By his plea of guilty, the accused admits his false statements were made to his superiors who were inquiring into a matter of official interest and chose not to put the Government to its proof that the designated officers were not acting personally in questioning him on the subject. Since the fact that these officers were conducting their interrogation of the accused officially goes unchallenged, the accused's false statements were a perversion of a Governmental function, regardless of the importance to that function of the matters with which the statements are concerned. United States v Hutchins, 5 USCMA 422, 18 CMR 46. As alleged, therefore, the accused's statements that he had paid his indebtedness to a Naval exchange and to a civilian business establishment may both fairly be construed as having been officially made.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs in the result.

FERGUSON, Judge (dissenting):

I dissent.

Insofar as the question of multiplicity is concerned, we have held, in a situation similar to that now ■■■■■■ presented to us, that each larceny and fraudulent claim transaction constituted but a single offense for punishment purposes. See United States v Rosen, 9 USCMA 175, 25 CMR 437; United States v Smith, 7 USCMA 102, 21 CMR 228. The law officer, therefore, overstated the maximum period of confinement by ten years in the present case. This is too far a cry from the de minimus predicated upon one month which we approved in United States v Helfrick, 9 USCMA 221, 25 CMR 483.

As to the question of whether or not the statements made by the accused were false official statements within the meaning of Article 107 of the Uniform Code of Military Justice, 10 USC § 907, it is sufficient to note that the circumstances surrounding them substantially approximate those which we held not to be false official statements in United States v Washington, 9 USCMA 131, 25 CMR 393.

As to the curative effect attributed to the accused's plea of guilty in the majority opinion, I fail to see how one may convert into an offense an act not one by confessing thereto. In United States v Welker, 8 USCMA 647, 25 CMR 151, we held a guilty plea to be improvident where it was inconsistent with the stipulation of facts. In United States v Lenton, 8 USCMA 690, 25 CMR 194, we held that we might examine the staff judge advocate's pretrial advice to determine the providency of the plea.

Consequently, I would reverse the decision of the board of review.