UNITED STATES, Appellee

v

JOHN E. NICHOLSON, Dental Technician Chief, U. S. Navy, Appellant

10 USCMA 186, 27 CMR 260

No. 11,645

Decided February 6, 1959

*Commander David Bolton,* USN, argued the cause for Appellant, Accused. With him on the brief was *Francis Berton Perry, Esquire.*

*Major Ted H. Collins,* USMC, argued the cause for Appellee, United States. With him on the brief was *Commander Craig McKee,* USN.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This is an appeal from a conviction by special court-martial. Two issues are raised by the accused. The first requires us to determine whether the evidence in regard to Charge II shows a false "official" statement within the meaning of Article 107, Uniform Code of Military Justice, 10 USC § 907.

Captain C. C. Taylor, U. S. Navy, was transferred from Okinawa to Bainbridge, Maryland. After his departure, several "action" dispatches came into the office of the Third Dental Company requesting information about a footlocker belonging to Captain Taylor which had purportedly been left with the accused for shipment. On these occasions, Dental Technician G. L. Waller "would start to take" the dispatches to Chief Warrant Officer J. Parrish, the unit's Administrative Officer, but the accused would take the dispatch from Waller with a remark to the effect that he would "take care of it."

The accused was enlisted Senior Chief in the office. Part of his duties included the care of the records of "all transfers in the company." When Parrish entered the office on April 24, 1957, the accused was at the telephone. He approached and in the accused's hand he saw a dispatch. He read it. It was a message dated April 9, from the Naval Training Center at Bainbridge addressed to the Commanding Officer of Headquarters Battalion requesting shipment data on Captain Taylor's footlocker. The message had apparently been forwarded from the Adjutant Routing Section and was certified to be a true copy by R. K. Ackerman. Parrish recognized the certifying signature as that of the Adjutant. He thereupon asked the accused "what action he had taken about Captain TAYLOR'S personal effects." The accused replied that he had taken them to "shipping and receiving" on November 6, 1956, and he exhibited a pencil notation to that effect in his own handwriting on the file copy of the Captain's transfer order. However, the footlocker was later discovered in the accused's quarters. As a result, he was charged with knowingly making a false official statement to Warrant Officer Parrish in violation of Article 107, supra.

In a number of recent cases we have discussed the requirement of officiality under Article 107.[1] We need not retrace our steps at this time. Suffice it to say that upon a permanent change of duty station, the Government is responsible for shipping the transferee's personal effects. See Joint Travel Regulations for the Uniformed Services, April 1, 1951. On its face, therefore, the dispatch regarding Captain Taylor's footlocker related to a proper military matter. As the unit's Admin-

---

[1] United States v Atkinson, 10 US CMA 60, 27 CMR 134; United States v Reams, 9 USCMA 696, 26 CMR 476; United States v Osborne, 9 USCMA 455, 26 CMR 235.

istrative Officer, Parrish had an interest in, and responsibility for, matters referred to his office for action. In carrying out his responsibility, he could call upon his subordinate for information on the matter. The accused's reply, therefore, constituted a statement relating to an official matter within the meaning of Article 107.

The second issue raised by the accused, who has over sixteen years of service, concerns the validity of the sentence. At trial, the president announced the sentence adjudged by the court-martial as follows: "to be discharged from the service with a bad conduct discharge, to forfeit fifty dollars per month for six months, and to be confined at hard labor for six months and to be reduced *to the grade of dental assistant.*" (Emphasis supplied.) Some weeks later, the findings of guilty and the sentence were approved by the convening authority. More than a month after the convening authority's action, a "Certificate of Correction" signed by the president of the court and a member, in lieu of trial counsel, was appended to the record. The document recites that the record of trial is corrected to show that part of the sentence is actually reduction to "the grade of dental apprentice." The reason for the correction is set out as follows:

"This error was due to the fact that it was the intent of this court to sentence the accused to a grade in his field equal to that of Private first class in the United States Marine Corps. The president of the court called the Division Legal Officer and was informed that the correct rank indicated by the court was that of dental assistant."

The purported Certificate of Correction raises disturbing questions regarding the time and circumstances under which the communication between the president and the division legal officer was made known to other court members. See United States v Linder, 6 USCMA 669, 20 CMR 385; United States v Allbee, 5 USCMA 448, 18 CMR 72. The view which we take of the "correction," however, makes it unnecessary to discuss these questions.

A certificate of correction should be used only to show that something which actually transpired at the trial is not properly reflected in the record, or that something is erroneously included in the record which did not occur at the trial. See United States v Galloway, 2 USCMA 433, 9 CMR 63; United States v Lowry, 4 USCMA 448, 16 CMR 22. In other words, it should be used only "to relate the true facts" that took place at the trial. Manual for Courts-Martial, United States, 1951, paragraph 86c. The certificate cannot be used to change the legal significance of an event that occurred at the trial. Here, the sentence announced by the president in open court included reduction to the grade of "dental assistant." It is not disputed that the words used expressed the actual vote by the court-martial. There is, therefore, *nothing to correct* by a certificate of correction. Cf. United States v Robinson, 4 USCMA 12, 15 CMR 12.

Apparently, the reduction to be effected by the sentence is to a nonexistent grade. Consequently, it is illegal. It is, however, a separable part of the sentence and it can be, and it hereby is, set aside. In all other respects, the decision of the board of review is affirmed.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I concur generally with my associates in their development and disposition of the first issue but reach a contrary result on the second question. Accordingly, my opinion will be limited to a discussion of the latter point.

First, I call attention to the fact that the question involved, as phrased by appellate defense counsel and granted by this Court, was worded as follows:

"Whether the accused was materially prejudiced: By the fact that while the court was deliberating on sentence the president consulted with the Division Legal Officer with regard

to the sentence; and by the fact that the record of trial fails to contain a verbatim or full report of that consultation."

It is apparent from the language of the grant that the only question considered of importance at that time was the prejudicial effect of the out-of-court conference. So far as the present opinion is concerned, that question remains unresolved and the case is disposed of on a point neither briefed nor argued and assuredly not one upon which the Court has had the benefit of the research of the parties. That alone is important. In addition, unless the certificate of correction is considered, there is nothing in the record to show any irregularities prejudicial to the accused, and the disposition ordered by the majority may definitely hurt him. Furthermore, unless the certificate is before the Court, it appears to me that the principles announced in United States v Alley, 8 USCMA 559, 25 CMR 63, and United States v Bell, 8 USCMA 193, 24 CMR 3, are controlling for, absent the certificate, the record merely discloses that the officer exercising general court-martial jurisdiction corrected a technical misdescription of the reduction imposed.

Before developing my views on the question argued, I point out that the majority opinion is inconsistent within its own confines. By way of illustration, it states, "A certificate of correction should be used only to show that something which actually transpired at the trial is not properly reflected in the record." It then goes on to hold that a certificate should be used only "to relate the true facts" that took place at the trial. I submit that a certificate, which shows an unrecorded communication between the president of a special court and a third party during secret deliberations does show what "actually transpired at the trial" and does "relate the true facts" which occurred there. To hold otherwise overrules the concepts announced in United States v Walters, 4 USCMA 617, 16 CMR 191. There we were dealing with an unrecorded conference, and the Chief

Judge and Judge Brosman concurred in this statement of the law:

"Clearly another procedure *is* available—for the current Manual for Courts-Martial provides that a certificate of correction may be secured when, during the course of review, a record of trial is 'found to be incomplete or defective in some material respect.' Paragraph 86c. The alleged gaps in the instant record were not dealt with through the preparation of such a certificate in the manner provided by the Manual. However, this deviation from the form of the usual certificate of correction does not appear to have been attributable either to the accused or his counsel. Moreover, it appears to have been effected with the full consent of the convening authority, who is charged by the Manual with the duty of securing corrections to the record of trial. Paragraphs 86c, 86d, 95. And the marked similarity of the contents of the certificates submitted by the defense counsel, acting for the accused, and by the trial counsel, who represented the Government at the hearing, and who is charged with the preparation of the record of trial under the direction of the court — Manual paragraph 82a — serves to analogize the situation to one of amending the record with the consent of the parties. See 3 Am Jur, Appeal and Error § 688."

Here we have a proper certificate of correction and the action by the president was such an integral part of the court-martial proceedings, not reported contemporaneously in the record, that I am surprised we would now consider the certificate inappropriate. And at this point I pause to wonder what the holding of the Court might be if the out-of-court conference was in law and fact prejudicial to the accused.

When considered in the background of this case, I am not quite certain just what content of meaning my brothers intend to include in their statement that a certificate of correction cannot be used to change a ruling or its legal significance. To test that concept, I suggest that if a record was transcribed

to show the sentence announced by a court was fifty years' confinement and, upon discovery, a certificate was filed showing the actual sentence voted by the court-martial was fifteen years' confinement, the certificate would be given validity even though it apparently changed some legal rights. But, accepting the majority's statement at its face value, it is inapposite in the present instance. It should go without saying that if the court-martial did not intend to reduce the accused, a certificate could not be used to effectuate a reduction, but it would be contrary to the facts to say this court did not intend to reduce the accused to a dental apprentice. What it intended to do was to impose a partial reduction and, when it was discovered that the grade was mislabeled, the court by an appropriate means supplied the correct designation. In 53 Am Jur, Trial, § 1036, I find the following statement of the law:

> "Construction.—Because inartificial expressions and words are sometimes employed in framing a verdict, the first object in the construction of a verdict is to learn the intent of the jury, and when this can be ascertained, such effect should be given to the verdict, consistent with legal principles and construing it as a whole, as will most nearly conform to the intent. The jury's intent is to be arrived at by regarding the verdict liberally, with all reasonable intendments in its support and with the sole view of ascertaining the meaning of the jury, and not under the technical rules of construction which are applicable to pleadings. In the interpretation of an ambiguous verdict, the court may make use of anything in the proceedings that serves to show with certainty what the jury intended, and for this purpose, reference may be had, for example, to the pleadings, the evidence, the admissions of the parties, the instructions, or the forms of verdict submitted."

I believe that in the military law, a certificate of correction is particularly designed for clearing up inartful expressions and ascertaining the true intent of the court. While counsel for the accused may not care to go as far as I do, I have every reason to conclude that he wants evidence of the unrecorded conference before this Court. He is the one who sought permission to augment the assignment of error first granted to cover this additional issue, and his sole hope for effective relief for his client is to have the entire sentence set aside because of the misconduct of the president of the court. Merely striking down the partial reduction leaves the punitive discharge in effect and places accused in the situation where the Naval Service may reduce him administratively to the lowest pay grade.

Accordingly, I disagree that the certificate in this case is of no efficacy, and I now pass on to explain my reasons for dissenting from the disposition ordered by the majority and to develop my view on the second assigned error. The issue grows out of an incident which involves a communication between the president of the special court-martial and the staff legal officer. The special court-martial returned findings of guilty and imposed sentence on June 21, 1957. The convening authority approved on August 5, 1957, and the officer exercising general court-martial jurisdiction acted on September 24, 1957. When the sentence was announced by the president, it included a reduction in grade to that of "dental assistant." Apparently, when the record reached the office of the division legal officer, it was discovered that the court-martial had failed to designate properly the grade to which the accused was reduced. I make that assumption for the reason that on September 9, 1957, a certificate of correction to the record was executed by the officers of the court. In that document, the sentence was corrected to show that the accused was reduced to the grade of "dental apprentice." The difficulty, however, arises out of the irregularity disclosed by the terminal part of the certificate. The correction reads as follows:

> "The record of trial in the above case which was tried by the special court-martial appointed by the Com-

manding Officer, Headquarters Battalion, 3d Marine Division, FMF, dated 6 June 1957, at Camp Courtney, Okinawa on 20 and 21 June 1957, is corrected by the insertion on page 73, immediately following line 12 of the following:

'the grade of dental apprentice.'

"This error was due to the fact that it was the intent of this court to sentence the accused to a grade in his field equal to that of Private first class in the United States Marine Corps. The president of the court called the Division Legal Officer and was informed that the correct rank indicated by the court was that of dental assistant."

Clearly it was an irregularity for the president of the court to contact the division legal officer and obtain information concerning the wording of a sentence. Admittedly, he may solicit assistance on points of law arising during the course of trial, but his primary source is the trial counsel. Even when he consults with that officer of the court, Article 39 of the Uniform Code of Military Justice, 10 USC § 839, requires that the proceedings be on the record. While it must be conceded that the president of a special court occupies a unique position in that he is both a judge and juror in the same case, when he acts in the latter capacity, he must be guided by the limitations imposed on a trier of fact. When deliberating on sentence, he more nearly approaches the role of a judge, but he should not communicate with third parties unless the accused and defense counsel are present, for they are entitled to know about any legal or factual matter which the president obtains from outside sources and uses to influence the members in their deliberations on sentence. Moreover, even allowable communication between the court-martial members and any other person should be fully reported in the record for the use and benefit of reviewing authorities. I, therefore, conclude the record as corrected discloses error.

That brings me to the issue of real

192

significance. In United States v Turner, 9 USCMA 124, 25 CMR 386, Judge Ferguson, speaking for the majority, stated:

"We begin our treatment of the remaining issue here with the premise accepted by us in United States v Allbee, 5 USCMA 448, 18 CMR 72, to the effect that the tradition of nonparticipation of the law officer in the deliberation of the court-martial is sufficiently well-established in the service so that where occasional lapses occur, this Court will utilize the rebuttable presumption that prejudice did in fact result from such participation. Applying this premise to the facts of the instant case, we must conclude that the Government has failed to rebut the presumption that prejudicial error has occurred. Our conclusion is based upon several factors which may be traced directly to the law officer's participation in the court's deliberations."

In the foregoing case, the Court was considering a law officer's participation, but the rule of presumptive prejudice is generally adopted by Federal courts in cases involving unlawful communications with jurors. Accordingly, I look to the record to determine whether the Government has rebutted the presumption that the accused was harmed. I conclude it has. The officers manning this court were commissioned in the Marine Corps and were not thoroughly familiar with the rating structure of the Navy. They had reached agreement on the appropriate punishment, and the president sought assistance in wording the sentence properly. The members had concluded not to reduce the accused to the lowest pay grade but rather to a grade equivalent to that of a private first class in the Marine Corps. Not knowing the proper nomenclature to identify that grade, the president went to one from whom he could expect to obtain the correct answer. The information sought was limited to the Navy rate structure and, in essence, the president received no more advice than the comparative grades in the two services, which I would hold, as a matter of law, was not prejudicial.

Counsel for accused to go one step further and assert that other matters may have been discussed. That is a bare possibility which is founded on speculation and conjecture. The certificate was filed to correct the record, and it discloses fully the only subject about which there was need for any consultation. Unless I impugn the veracity of the president of the court, all parts and portions of the sentence had been agreed upon and, except for the reduc- tion in grade, no technical advice was required to put the sentence in proper legal language. The only question causing concern to the court was the one involving the proper designation for the reduced grade decided upon, and the certificate shows the inquiry was limited to that proposition. Accordingly, I find accused was not prejudiced by the president's error.

I would affirm the decision of the board of review.