UNITED STATES, Appellant

v

GLEN D. HOLLIS, Seaman Apprentice,
U. S. Navy, Appellee

11 USCMA 235, 29 CMR 51

No. 13,511

Decided February 5, 1960

*Major George M. Lilly,* USMCR, argued the cause for Appellant, United States.

*Lieutenant Colonel Earl W. Johnson,* USMC, argued the cause for Appellee, Accused.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Charged with the murder of his seven-month-old son, the accused was convicted on June 16, 1959, of involuntary manslaughter, in violation of Article 119, Uniform Code of Military Justice, 10 USC § 919. The court-martial[1] was instructed that the maximum punishment was a dishonorable discharge, confinement at hard labor for three years, forfeiture of all pay and allowances, and reduction to seaman recruit. There was no instruction on the imposition of hard labor without confinement. After some deliberation in closed ses-

[1] NCM 59–01186.

235

sion, the court reopened and the following occurred:

"PRES: Glen D. Hollis, seaman apprentice, U. S. Navy, it is my duty as president of this court to inform you that the court in closed session and by secret ballot, sentences you: To three (3) years of hard labor, reduction to seaman recruit, forfeiture of pay and allowances and to be followed by a dishonorable discharge.

"LO: Was that forfeiture of all pay and allowances?

"PRES: Yes.

"TC: Was that sentence arrived at by two-thirds of the members present concurring?

"PRES: It was.

"LO: Does the trial counsel have anything further?

"TC: No, sir.

"DC: The defense has nothing further.

"LO: Orderly, escort the accused out. The court will adjourn to the call of the president.

"PRES: The court will adjourn."

The record of trial was duly authenticated by the president and the law officer. Almost a month after the trial, the convening authority approved the sentence and forwarded the record of trial to the office of The Judge Advocate General of the Navy for review by a board of review. The court-martial order which he promulgated shows the sentence adjudged by the court-martial to be *confinement at hard labor* for three years. When the case came before the board of review, appellate defense counsel contended the convening authority improperly stated the sentence of the court-martial in that it did not in fact include confinement, and that, as adjudged, hard labor in excess of three months was illegal under the maximum punishment provisions prescribed in the Manual for Courts-Martial, United States, 1951. Paragraph 126*k* of the Manual provides in part that:

"Hard labor without confinement will not be adjudged in excess of three months."

The Government thereupon obtained a certificate of correction and affidavits from the trial personnel to clarify the "apparent discrepancy." The board of review refused to accept the certificate of correction, and held that at that late date the Government could not change "the legal significance of the sentence announced in open court." For reasons set out in separate opinions, two of the members affirmed a sentence which includes hard labor without confinement for three months. The third member of the board of review voted to approve only a bad-conduct discharge and reduction to seaman recruit.

Pursuant to Article 67(b)(2), The Judge Advocate General of the Navy certified the case to this Court for review on the following issues:

"a. Whether the Board of Review was correct in refusing to allow the Government to show by a Certificate of Correction and supporting affidavits the sentence actually adjudged by the members of the court.

"b. Whether the Board of Review was correct in interpreting the phrase 'to three years of hard labor' to mean to perform hard labor without confinement for three years."

The president and members of the court-martial filed affidavits to the effect that they actually voted a sentence to confinement at hard labor for three years. None had any "independent recollection" of the sentence announced by the president in open court. Similarly, the law officer and defense counsel certified that they had no recollection of the inclusion or omission of the word "confinement" from the sentence, but trial counsel said the president used the words "to three years of hard labor." It also appears to be conceded, as represented by trial defense counsel in a separate certificate, that "the reporter's notes correspond with the record." The certificate of correction purports to delete the sentence appearing in the record, and substitutes a sentence providing for confinement at hard labor for three years. "This correction is made," says the certificate, "because the sentence as stated above is the actual sentence which the court did, in fact, arrive at and vote to impose on the accused."

We begin with the simple fact that the certificate of correction does not actually correct the record. It sets out the court's vote on the sentence but that is not the sentence announced in open court. In United States v Nicholson, 10 USCMA 186, 27 CMR 260, we pointed out that a certificate of correction can be used to show an event or occurrence that took place at the trial but which is not properly reflected in the transcript of the proceedings, or to delete something from the transcript because the matter is erroneously included. These are true corrections of the record. Here, however, the certificate purports to change what was said at the trial into something that should have been but was not said. This is not correction but alteration of the record. A certificate cannot be used for such purposes.

What the certificate clearly reveals is that the president by a "slip of the tongue" omitted the word "confinement" from his statement of the sentence adjudged by the court. At no time, however, was the actual sentence ever formally announced. As far as the concededly correct transcript of the record shows, therefore, the sentence is "three (3) years of hard labor." We cannot change the record to read otherwise. As we said in a different but related connection in United States v Smith, 8 USCMA 582, 584–5, 25 CMR 86:

"... an appellate authority cannot change the record. It cannot resort to other matter which was not made a part of the trial proceedings. Even if it is morally certain that an instruction is simply the result of an oversight, the appellate tribunal is bound to weigh the adequacy of the instruction as it was given at the trial, and as it appears in the record of trial."

On the present record, the board of review was entirely correct in refusing to give effect to the certificate of correction. We, therefore, answer the first certified question in the affirmative.

Eliminating the certificate of correction does not dispose of the issue the Government has raised. Basically, the Government contends the court actually sentenced the accused to confinement. As long as the president's "slip of the tongue" remains on the record, it cannot use a certificate of correction. There is, however, another way in which mistakes may be corrected; that method is the revision proceeding. Article 62, 10 USC § 862; paragraph 86d. Manual for Courts-Martial, United States, 1951, provides as follows:

"d. **Revision proceedings.** — For procedure in revision, see 80. When there is an apparent error or omission in the record, or when the record shows improper or inconsistent action by a court-martial with respect to a finding or sentence which can be rectified without material prejudice to the substantial rights of the accused, the convening authority may return the record to the court for appropriate action (Art. 62b). For example, if a previous conviction was erroneously considered by the court, and it is believed that the consideration of such conviction influenced the court in adjudging the sentence, or if the sentence adjudged is less than the mandatory sentence for the offense, the convening authority may return the record to the court to reconsider the matter and revise its proceedings accordingly. In such a case, the record is ordinarily transmitted to the trial counsel of a general or special court-martial or to the summary court-martial by a written communication pointing out the apparent defect in the record and directing the reconvening of the court for the purpose of reconsideration and revision of its proceedings. See Article 62b as to matters that cannot be reconsidered. Except for the purpose of making the record show the true proceedings and the exceptions stated in Article 62b(2) and (3), proceedings in revision may not be had in any case in which any part of the sentence has been ordered executed."

Whether there are limitations of time for the holding of revision proceedings need not give us pause. There are specific limitations on the power the court-martial can exercise in such proceed-

237

ings. One of these limitations is that the court-martial cannot increase "the severity of the sentence unless the sentence prescribed for the offense is mandatory." Article 62(b)(3), 10 USC § 862. This limitation brings up for consideration the exact nature of the sentence announced by the president. In the final analysis this is the crux of the application for review.

The board of review held that the announced sentence was one which did not include confinement. We reach a different conclusion.

Technical nicety cannot override the true meaning of the court-martial's action. As we pointed out in ■ United States v Bell, 8 USCMA 193, 24 CMR 3, it is the meaning of the court-martial that governs, and which must be given legal effect. Considering the announced sentence in the light of the law officer's instruction, which makes no mention of hard labor without confinement, it is manifest that the court-martial wanted to adjudge the maximum sentence for the offense found. Confinement at hard labor is an integral part of that sentence. The convening authority, therefore, correctly construed the announced sentence as one which includes confinement. In adding the words "confinement at hard labor" to the sentence in the court-martial order, he was merely making explicit what was clearly implicit in the sentence announced by the court-martial. See United States v Bell, supra; cf. United States v Dunn, 9 USCMA 388, 26 CMR 168. Accordingly, we answer the second certified question in the negative.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Navy for reference to the board of review for reconsideration of the sentence.

Judge LATIMER concurs in the result.

FERGUSON, Judge (dissenting):

I dissent.

The accused was found guilty of involuntary manslaughter, in violation of Uniform Code of Military Justice, Ar-

238

ticle 119, 10 USC § 919. Following the imposition of sentence, the convening authority approved the findings and penalty. A Navy board of review deemed the announced sentence ambiguous and, refusing to give effect to a purported certificate of correction, reduced it accordingly. Thereafter, The Judge Advocate General of the Navy certified to this Court the questions whether the board acted correctly with respect to the certificate of correction and properly interpreted the announcement of accused's punishment. The Chief Judge concludes the board properly rejected the certificate of correction. With that assertion I unreservedly agree. United States v Nicholson, 10 USCMA 186, 27 CMR 260; Manual for Courts-Martial, United States, 1951, paragraph 86c. However, he also believes that the board of review erred in its construction of accused's sentence, and reverses its decision. In this respect, I think he errs seriously, and I cannot join in that disposition of this case.

The operative facts are simple. Following receipt of matters in extenuation and mitigation, the law officer instructed the court members that the maximum sentence which they might impose was dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for three years. The court was closed and the members deliberated in secret session. Upon reopening, the president announced the sentence:

"PRES: Glen D. Hollis, seaman apprentice, U. S. Navy, it is my duty as president of this court to inform you that the court in closed session and by secret ballot, sentences you: To three (3) years of hard labor, reduction to seaman recruit, forfeiture of pay and allowances and to be followed by a dishonorable discharge.

"LO: Was that forfeiture of all pay and allowances?

"PRES: Yes.

"TC: Was that sentence arrived at by two-thirds of the members present concurring?

"PRES: It was.

• • • ; •

"PRES: The court will adjourn." [Emphasis supplied.]

The principal opinion expresses the view that the omission from the sentence of the words necessary to place the accused in confinement for a term of three years is no more than a technical nicety. It finds that the intent of the court-martial to adjudge the maximum sentence is reasonably to be inferred from the fact that the law officer instructed the members of the court-martial only on the maximum sentence which might be imposed and that he made no reference to lesser penalties. Implicit in this reasoning, of course, is the conclusion that the law officer is under a duty to set forth to the members of the court all the possible penalties which they might impose. I suggest that such is not the rule previously enunciated by this Court or any other military appellate body. On the contrary, we have held only that the law officer must instruct the members of the court-martial concerning the maximum limitations upon their power to punish. United States v Turner, 9 USCMA 124, 25 CMR 386. The rationale of that limited requirement certainly involves the concept that court members are sufficiently familiar with such penalties as hard labor without confinement, reduction, reprimand, restriction, and the like, that they need not be set forth by the law officer in inexhaustible succession.

Moreover, it is simply illogical to argue that only a maximum sentence could have been intended in view of the sentence instructions. As judges, we know that is the normal advice given to courts-martial. As judges, we also know it is the exceptional case in which the severest punishment is awarded. Indeed, military policy is to the effect that maximum penalties will be reserved for the most aggravated cases. Manual for Courts-Martial, United States, 1951, paragraph 76a(2).

Finally, if we are to speculate from the matters contained in the entire record concerning the intent of the court-martial in imposing sentence, I suggest that some attention should be given to the extensive psychiatric testimony concerning accused's poor mental state and the fact that his delict was a proximate result of that condition. We should also recognize that evidence of his good character was introduced and that his remorse over his offense was such that some feared he would commit suicide. Certainly, it is logical to infer from these circumstances that the members of the court-martial felt confinement was unnecessary. More importantly, however, these facts demonstrate that interpretation of the announced sentence upon the basis of variant factors in the record is little more than a judicial guessing game, the result of which depends upon the emotional impact of the offense charged upon a majority of the Court. See the dissenting opinion of Mr. Justice Holmes in Northern Securities Co. v United States, 193 US 197, 24 S Ct 436, 48 L ed 679 (1904). I prefer the sounder approach dictated by the precedents decided in this Court.

In United States v Cuen, 9 USCMA 332, 26 CMR 112, we were required to pass upon a sentence "to be fined $65.00 a month for a period of 6 months." The Government argued before us that it was obvious the members of the court-martial meant to impose upon the accused forfeitures rather than a fine. With respect to this contention, we stated, at page 337:

" . . . We cannot speculate that the imposition of a 'fine' rather than 'forfeitures' was due to inadvertence or ignorance on the part of the court members. . .

"The Government concedes that a fine 'could have been adjudged by this court-martial' but insists that is not what the court intended to do. We are unable to adhere to this contention. *We merely look to the four corners of the sentence and if valid on its face we cannot permit inquiry into the intent of the court-martial which adjudged it. Cf. United States v Nedeau, 7 USCMA 718, 23 CMR 182.*" [Emphasis supplied.]

In his separate concurring and dissenting opinion, Judge Latimer joined in the foregoing conclusion with the following declaration, at page 340:

" . . . I do not think it wise to

**239**

delve behind the words given in open court. We should not speculate on what meaning a court intended when there is no ambiguity. The words used announce an unusual but recognized and legal sentence."

Looking to the four corners of this sentence, it is at once apparent that the portion referring to "hard labor" adjudges a "recognized and legal sentence," albeit for an excessive period. Hard labor alone has been recognized as a penalty by military law for many decades. Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, pages 421, 486–487. It is expressly authorized under the current Manual for Courts-Martial. Manual, supra, paragraph 126k. It is usually announced by informing the accused that he is "To perform hard labor for — (days) (months)." Manual, supra, Appendix 13, Form 5. Thus, it is clear that the sentence here involved a category familiar to all participating in the administration of military law. While the amount adjudged exceeded that authorized by the Manual, supra, this does not affect the validity of the classification of the punishment. It merely requires reduction of the *quantum* to legal limits —an action already taken by the board of review, although based in part upon an erroneous interpretation of United States v Varnadore, 9 USCMA 471, 26 CMR 251. These considerations convince me the sentence is proper upon its face and that it should be interpreted as imposing dishonorable discharge, forfeiture of all pay and allowances, and performance of hard labor for three months.

In sum, I am of the opinion we should adhere to established principles in bringing certainty to the judgments of courts-martial. Otherwise, we fall into the trap of superimposing our personal views concerning an appropriate punishment upon those set forth by the members of the court and reviewing officials. The inevitable result is an *ad hoc* redetermination of sentence at this level. Congress has not conferred that authority upon us, and I prefer not to assimilate it under the guise of giving effect to the purported intent of a court-martial.

I would answer the certified questions in the affirmative and affirm the decision of the board of review.