UNITED STATES, Appellee,

v.

Billy R. CUMMINGS, Specialist Four, U. S. Army, Appellant.

No. 33,454.
SPCM 11946.

U. S. Court of Military Appeals.

Aug. 1, 1977.

*Colonel Robert B. Clarke, Colonel Alton H. Harvey, Lieutenant Colonel John R. Thornock, Captain Michael P. La Haye,* and *Captain D. David Hostler* were on the pleadings for Appellant, Accused.

*Colonel Thomas H. Davis, Major John T. Sherwood, Jr., Captain Clement L. Hyland,* and *Captain Gary F. Thorne* were on the pleadings for Appellee, United States.

Opinion of the Court

FLETCHER, Chief Judge:

The appellant was convicted of a 4 day absence without leave and two specifications of making false official statements in violation of Articles 86 and 107, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 907, respectively. He was sentenced to a bad-conduct discharge, confinement at hard labor for 1 month and reduction to the grade of Private E–1. The Army Court of Military Review approved the findings, and only so much of the sentence as provided for confinement at hard labor for 1 month and reduction to the grade of Private E–1. We granted the petition for review to consider whether the evidence of record is insufficient as a matter of law to establish that the false statements made by the appellant were official within the meaning of Article 107. Upon examination of our prior precedent and the evidence of record, we conclude that the evidence is legally insuffi-

cient and reverse his conviction for making those statements. *United States v. Arthur,* 8 U.S.C.M.A. 210, 24 C.M.R. 20 (1957).

In *United States v. Arthur, supra,* an officer observed the accused strike someone. He identified himself to Arthur as an officer and requested identification from Arthur, who refused. He then ordered Arthur to go to the air police station with him, but Arthur refused this order as well. This led the captain to inform Arthur that he was being arrested. Airman Arthur replied that since "he was a member of the Air Police," he could not be arrested. The quoted statement was the basis for his conviction of making a false official statement in violation of Article 107.

In the present case, Specialist Cummings was told by a Sergeant Dellaguistina to obtain a permanent registration for his motorcycle. The accused later informed Sergeant Dellaguistina that he had registered his motorcycle that day. The sergeant told Cummings to show him the registration form, and Cummings replied, "Okay. Wait a minute. I'll go upstairs and get it for you and bring it right back." However, appellant did not return, and was not seen again until Sergeant Dellaguistina saw him registering his motorcycle. As a result, appellant was charged with, and convicted of, making the following false official statements: "I have registered my motorcycle on post" (specification 1), and "I left the forms to motorcycle registration in my room upstairs, I'll go get them for you" (specification 2).[1]

▮ The facts of *Arthur* are not significantly different from those in the instant case and the same legal principles apply. In *Arthur,* the majority noted that "the rights and the obligations of a person as an officer are separate from his performance of a governmental function."[2] They further reiterated that the purpose of Article

107, UCMJ, was "to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described."[3] Therefore, in order to be "official" and subject to Article 107, "a statement must be concerned with a governmental function."[4] Thus a statement is not "official" merely because it is made to an officer. It is only official if that officer is "carrying out a military duty" at the time the statement is made. Because the captain in *Arthur* "was not acting as a law enforcement agent" at the time he encountered the accused, but was only acting as an officer, the accused's statement to him was not official.[5] The ultimate issue was whether the officer was authorized to require the statement in the execution of his particular military duty.

What particular military duty required Sergeant Dellaguistina to question the appellant about registration of his motorcycle? The general duty of a superior to insure that his subordinates obey applicable regulations arises solely from his status, and not from a particular military duty. Therefore, we must look elsewhere for the requisite duty. The kind of duty referred to may be gleaned from consideration of other instances where we found the statement to be "official": when made to the investigating officer in a line of duty determination, *United States v. Hutchins,* 5 U.S.C.M.A. 422, 18 C.M.R. 46 (1955); when made in a personal history statement, *United States v. Geib,* 9 U.S.C.M.A. 392, 26 C.M.R. 172 (1958); when made to the company administrative officer (who was responsible for such matters) concerning the disposition of personal property belonging to a serviceman who had transferred from his unit, *United States v. Nicholson,* 10 U.S.C.M.A. 186, 27 C.M.R. 260 (1959); and when made in a report of a crime to the military police,

---

1. The appellant was acquitted of failing to obey the sergeant's order to register his motorcycle for tags on post.

2. *United States v. Arthur,* 8 U.S.C.M.A. 210, 211, 24 C.M.R. 20, 21 (1957).

3. *Id.,* quoting from *United States v. Hutchins,* 5 U.S.C.M.A. 422, 427, 18 C.M.R. 46, 51 (1955).

4. 8 U.S.C.M.A. at 211, 24 C.M.R. at 21.

5. *Id.*

*United States v. Collier,* 23 U.S.C.M.A. 173, 48 C.M.R. 789 (1974). The common thread in these cases is that each statement was actionable under Article 107, UCMJ, because it perverted the functions of a government agent. *United States v. Collier, supra.* Thus, the person to whom the falsehood is directed must be responsible for the performance of the governmental function which the accused sought to subvert by his statement.

Did Sergeant Dellaguistina have any specific responsibilities for enforcement of vehicle registration on post? In reply to the defense argument to the contrary, the government takes the position that AR 190–5–1 (Registration of Privately Owned Motor Vehicles, 12 November 1974, effective 1 January 1975), imposes responsibilities on unit commanders to insure compliance by their troops with the requirements of that regulation. As support for this position Government counsel rely upon the statement of objective, which is that the registration program "is designed to assist commanders in carrying out effective law enforcement, crime prevention, and traffic safety programs" (paragraph 5), and the provision in paragraph 6c that: "Commanders will insure that maximum publicity is given to requirements for vehicle registration." The government concludes that "[a]s the vehicle registration system was designed to assist commanders in carrying out effective law enforcement, crime prevention and traffic programs, it is incumbent upon the commander to insure that the registration process is not being subverted." The record shows that Sergeant Dellaguistina told the accused to obtain a copy of his registration form so the sergeant could give it to the commander for his files. Under the government's view, the sergeant was thereby aiding the commander in discharging his responsibilities under AR 190–5–1, and since the registration program cannot accomplish its objective unless the commander has power "to insure, through his subordinates, that this governmental function (registration of motor vehicles) is not being subverted," counsel contend that Sergeant Dellaguistina was performing a military function when the false statements were made to him.

■ We do not share the government's reading of AR 190–5–1 as imposing these requirements on unit commanders. Our reading of the regulation as a whole and in particular its implementing paragraph, convinces us that the term "commanders" refers only to installation commanders or their superiors. Otherwise, for example, paragraph 2b, authorizing modifications of the regulation in overseas areas, would apply to unit commanders, but such an interpretation certainly was not intended. Indeed the responsibility for "effective law enforcement, crime prevention and traffic safety programs" must reside with installation, rather than unit, commanders. (Paragraph 5). Any other reading would lead to a myriad of programs rather than the single coordinated effort contemplated by the regulation. If unit commanders have any responsibilities under the installation registration program, proof thereof is required, and no such proof has been presented. The requirement to "insure . . . maximum publicity" (paragraph 6c) was satisfied when Sergeant Dellaguistina told the accused to register his motorcycle. Neither he nor the unit commander was given any further duties by paragraph 6c, even assuming (and we conclude otherwise) that that provision applies to unit commanders. Therefore, AR 190–5–1 does not impose any responsibilities on the unit commander or his subordinates for enforcement of vehicle registration on post. Accordingly, Sergeant Dellaguistina was not acting in an "official" capacity when the accused made the false statements to him, and the convictions under Article 107 cannot stand.

The decision of the United States Army Court of Military Review is reversed. The findings of guilty of Charge IV and its specifications are set aside and ordered dismissed. The record of trial is returned to the Judge Advocate General of the Army for submission to the Court of Military Review for reassessment of the sentence.

Judge COOK and Judge PERRY concur.