UNITED STATES, Appellee,

v.

**Private E2 Robert D. BAKER,
246–15–8360, United States
Army, Appellant.**

ACMR 8802811.

U.S. Army Court of Military Review.

22 March 1990.

For Appellant: Colonel John T. Edwards, JAGC, Captain Jon W. Stentz, JAGC (on brief).

For Appellee; Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Maria C. Fernandez, JAGC, Captain James K. Reed, JAGC (on brief).

Before MYERS, JOHNSON, and NEURAUTER, Appellate Military Judges.

OPINION OF THE COURT

JOHNSON, Judge:

Appellant was tried by a general court-martial composed of officer and enlisted members at Fort Hood, Texas, on 6 December 1988. Pursuant to his pleas, appellant was found guilty of conspiracy to distribute methamphetamine, absence without leave terminated by apprehension, distribution of methamphetamine (three specifications), and distribution of lysergic acid diethylamide in violation of Articles 81, 86, and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 886, and 912a (1982 and Supp. IV 1986) [hereinafter UCMJ].

As announced by the president of the panel, appellant was sentenced to confinement for ten years, total forfeitures, reduction to Private E1, and a fine of $1100.00. Following adjournment, the military judge was advised that there may have been an error in announcing the sentence. He thereafter called two post-trial sessions.

At the first session on 8 December 1988,[1] the panel members were questioned as to the sentence adjudged during their deliberations, and all agreed that the adjudged sentence had included a dishonorable discharge. At the second session, held on 22 December 1988, the military judge announced that the sentence which included the dishonorable discharge could be approved.

Pursuant to a pretrial agreement, the convening authority thereafter approved the findings and only so much of the sentence as provided for a dishonorable discharge, confinement for five years, total forfeitures, a fine of $1,100.00, and reduction to Private E1.

The possible error in the sentence announcement first came to light in a telephone conversation between the trial counsel, Captain (CPT) H and a member of the panel, Lieutenant Colonel (LTC) B, somewhat more than an hour after the court-martial had been adjourned. LTC B testified that he called the trial counsel to arrange a discussion having to do with public speaking in general; the purpose of the call had nothing to do with appellant's trial. However, during the course of the conversation, the subject of appellant's court-martial arose when the panel member asked CPT H if there had been a pre-trial agreement in the case. After responding to that inquiry, CPT H then remarked, according to the testimony of both, that he was curious as to why no punitive discharge had been adjudged by the panel. LTC B responded that the panel had agreed upon a discharge. CPT H stated that he didn't believe there had been according to the sentence as announced or the findings

worksheet. LTC B reiterated that a discharge had been adjudged.

The panel member then called Colonel (COL) G, the president of the panel, and advised him of the possible error in the sentence announcement. COL G immediately called the military judge to alert him of the matter. The military judge then directed the trial counsel to reassemble the entire court. By this time, the eleven court members had dispersed and because of the "heavy schedules of all of the parties," the court could not be reassembled until the morning of 8 December 1988. With all parties present at that session, the military judge apprised the members as to what had happened since the court had adjourned. This colloquy then followed:

MJ: Now, I also, ... before the colonel announced the sentence, took a look at the worksheet, went over that very carefully, and I noticed on the worksheet that no discharge had been circled or indicated on that ... worksheet, either a Dishonorable Discharge or a Bad Conduct Discharge.

So, the first question I have, Colonel, Colonel [G], is my recollection of what happened and what I just said correct?
COL G: It is correct.
MJ: Did at least eight of the eleven members at this court-martial vote for a Dishonorable Discharge in this case?
COL G: Yes, they did.
MJ: Now, Colonel, what happened? Why didn't you record the discharge on the worksheet?
COL G: It was clearly an administrative error on my part in not recording it. As I went down each one of the—the spaces on the form trying to find the one that corresponded to what we had determined to be the sentence, as I say, clearly it was an error on my part that I did not include that on the form and then when I read it out in court, I just read out what I had circled.
MJ: Did you count the votes? Did you go over the....

---

1. Although the authenticated record of trial notes that the initial Article 39(a), UCMJ, session adjourned on 8 January 1988, we find as a matter of fact that it was terminated on 8 December 1988.

COL G: Yes, I did.

MJ: And the vote was by secret written ballot?

COL G: Yes, it was.

MJ: And you do recall eight of the members—at least eight of the members voting for this Dishonorable Discharge?

COL G: Yes.

The military judge then asked each of the other panel members if they recalled whether the senior member had announced that the required majority had voted for the dishonorable discharge, and each responded affirmatively. One member recalled that he had counted the votes as they were read aloud, and that actually there were nine votes for the discharge. The military judge also noted that none of the panel members had indicated an awareness that the president had not announced the dishonorable discharge. Counsel were then permitted to put questions to the panel.

■ Appellant objected to the questioning of the members at the post-trial session, and asserts on appeal that the military judge erred in allowing correction of the sentence under the circumstances of this case. We find this argument to be without merit.

The Manual for Courts–Martial provides that:

If the announced sentence is not the one actually determined by the court-martial, the error may be corrected by a new announcement made before the record of trial is authenticated and forwarded to the convening authority. This action shall not constitute reconsideration of the sentence. If the court-martial has been adjourned before the error is discovered, the military judge may call the court-martial into session to correct the announcement.

Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial [hereinafter R.C.M.] 1007(b). This rule clearly contemplates correction of an error in the announced sentence when it is discovered after the court-martial has adjourned. By specifying that this corrective action may be taken before the record of trial is authenticated and sent to the convening authority, there is no doubt as to when the last opportunity for taking such action is reached. *See United States v. Robinson,* 15 C.M.R. 12 (C.M.A.1954). Additionally, by specifying that this shall not constitute reconsideration of the sentence, the intended purpose of this provision—to correct an error—is further emphasized and distinguished from other rules which govern reconsideration.

In the case before us, the military judge followed the proper procedures to verify and correct an erroneous sentence announcement. Alerted within an hour and a quarter after adjournment of the possibility of error by the president of the court, the military judge personally advised the defense counsel of this development, and then directed the trial counsel to reassemble the court. There is no doubting the desirability of reassembling the court-martial as quickly as possible under these circumstances, on the same day if that is practicable. That this was not done until the morning of the second day after adjournment is of no consequence. The military judge in his findings noted for the record that the court was reassembled at the earliest opportunity and, given the other commitments of the parties and the size of the panel, we find that this was not unreasonable. The military judge's findings also indicate that there was only one contact between panel members prior to reassembling the court; that occurred when LTC B informed COL G that a mistake had been made. Accordingly, there was no evidence that the panel had any occasion to reconsider appellant's sentence. The military judge reassembled the court post-trial as an Article 39(a), UCMJ, session pursuant to R.C.M. 1102, an appropriate procedure to inquire into the circumstances surrounding the discovery of the mistake and whether a mistake had been made.

Once the panel members and all parties who were present at the trial were reassembled, the military judge instructed the panel members on the extent to which they could respond to questions concerning their deliberations on the sentencing of appel-

lant, and then with circumspection questioned the members himself. Trial and defense counsel also were given the opportunity to question panel members. The senior member and all other members indicated without hesitation that a dishonorable discharge had indeed been adjudged. What occurred was an erroneous announcement of the agreed upon adjudged sentence. The senior member's failure to record in full the agreed upon sentence on the worksheet no doubt contributed to his oversight of not announcing the entire adjudged sentence. We are also convinced that there was no reconsideration of the sentence. Accordingly, we are confident that the dishonorable discharge was included in the adjudged sentence the members agreed upon during their original deliberations.

Although the president of the panel clearly stated that a dishonorable discharge was included in the adjudged sentence at the 8 December 1988 post-trial session, he did not formally announce this information to the appellant in the customary manner. In open court, each of the remaining ten panel members also confirmed the adjudgement of a dishonorable discharge. There was no ambiguity as to the purpose of the post-trial session, or its ultimate result: verification that a dishonorable discharge was indeed a part of the original, agreed upon sentence. Likewise, COL G's announcement of appellant's sentence at his trial was in no way ambiguous, only incomplete.

■ We believe that R.C.M. 1007(b) contemplates a "new announcement" of the sentence when it is corrected. Although the military judge handled this delicate situation with commendable judiciousness, we find it to be the better practice in such cases for the president to announce the corrected sentence *in toto* in open court. Under the circumstances, however, appellant was neither misled nor prejudiced by

this omission. *See United States v. Hemingway*, 22 M.J. 939, 940 (A.F.C.M.R.1986). Because the error was discovered and all parties alerted to the possible erroneous sentence announcement within hours after adjournment, and because the matter was corrected within the time prescribed by R.C.M. 1007(b), there was no prejudice to the appellant.[2]

■ Appellant also asserts that the telephone conversation between the trial counsel and a member of the panel which revealed the mistake in the sentence announcement was in the nature of an *ex parte* communication violative of Article 37, UCMJ, 10 U.S.C. § 837. We find no merit in this argument. Nothing in the record suggests that the trial counsel's inquiring remark as to the absence of a discharge was in any way improperly motivated or intended to pry into the protected province of the members' deliberations. Both the panel member's question about the pre-trial agreement and the remark which followed by the trial counsel appear to have arisen from nothing more than legitimate curiosity or interest in court-martial procedures or the results of the trial. As such they were harmless, and permitted a more timely correction than otherwise might have occurred.

We have considered the other matters personally raised by the appellant, and find them to be without merit.

The findings of guilty and the sentence to include the dishonorable discharge are affirmed.

Senior Judge MYERS and Judge NEURAUTER concur.

---

2. We also find no violation of Manual for Courts–Martial, 1984, Mil.R.Evid. [hereinafter Mil.R.Evid.] 606(b) as asserted by appellant. The military judge cautioned both panel members and counsel that the members were not to be questioned as to how they had voted during their deliberations, and that in no case were the members to divulge how they had voted. The questions by the military judge to the members established the required facts with respect to the agreed upon sentence without intruding into matters proscribed by Mil.R.Evid. 606(b).