UNITED STATES, Appellee

v

MICHAEL P. LIBERATOR, Airman Third Class,
U. S. Air Force, Appellant

14 USCMA 499, 34 CMR 279

Major William A. Crawford, Jr., argued the cause for Appellant, Accused. With him on the brief was Colonel Daniel E. Henderson, Jr.

Captain Donald W. Brewer argued the cause for Appellee, United States. With him on the brief was Colonel Emanuel Lewis.

## Opinion of the Court

KILDAY, Judge:

Pursuant to his pleas of guilty, accused was convicted by special court-martial of four specifications of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He was sentenced to bad-conduct discharge, confinement at hard labor for six months, partial forfeitures for the same period, and reduction in grade. The convening authority and the officer exercising general court-martial jurisdiction approved, and a board of review in the office of The Judge Advocate General of the Air Force thereafter affirmed the findings and sentence. Accused subsequently sought relief from this Court, and we granted his petition for review in order to consider two assignments of error.

### I

Although it goes to the validity of the findings of guilty, the first issue assigned does not necessitate recitation of the circumstances of the offenses. It requires that we determine the merit of appellate defense counsel's assertion that:

"THE CLOSED SESSION ON FINDINGS WAS IMPROPER, AND IN VIOLATION OF ARTICLE 39, UCMJ."

The facts giving rise to this issue are undisputed and may be recounted gen-erally. The record reflects that after accused's guilty pleas were entered, the prosecution, in accordance with Air Force policy, established a prima facie case. Having been appropriately instructed on pertinent matters, the court-martial then closed to deliberate on findings. About half an hour later the court reopened and findings of guilty were announced. Evidence and argument in extenuation and mitigation was then presented to the court-martial and, after instructions as to maximum imposable punishment, it closed to determine accused's sentence. When the court reopened, very shortly, the president announced sentence and stated the court-martial would adjourn. Immediately, defense counsel requested that court be reopened and moved for mistrial. As grounds, he asserted that unauthorized persons had intruded on the court members while they were in closed session deliberating on the findings.[1]

Inquiry into the matter disclosed that a sergeant from the base legal office had indeed entered the closed session on findings. It was also determined, however, that he had done so only after the members had voted on findings and for the purpose of delivering coffee to them pursuant to prior arrangement that the same be procured at approximately that hour. The sergeant deliv-

---

[1] The record does not reflect when defense counsel became aware of the alleged improper intrusion, or why no complaint was registered until after announcement of sentence. Because of the view we take as to the first issue, it is unnecessary to inquire into those matters and we decline to speculate whether counsel was other than candid in his dealings with the court and timely in his action. In this connection, however, attention is invited to United States v Wolfe, 8 USCMA 247, 250, 24 CMR 57.

ered the coffee even though he was aware the court was in closed session, but not until summoned by one of the members. He remained in the presence of the court-martial only momentarily, and there was no discussion whatever except as to payment for the coffee. After those facts were elicited and the parties argued their respective positions, the motion for mistrial was denied.

The defense points out that Article 39, Uniform Code of Military Justice, 10 USC § 839, absolutely forbids unauthorized intrusions, of the sort with which we are concerned here, into the secret deliberations of a court-martial. It is the position of appellate defense counsel that the intrusion in the case at bar constituted such a gross infraction of the codal mandate as to require that the findings of guilty be set aside.

We cannot agree. The record shows the circumstances of the unauthorized intrusion. As the board of ▋ review pointed out, in ruling on this same contention, the facts emphatically rebut the presumption of prejudice that otherwise flows from the entry of interlopers into a closed session on findings. See United States v Allbee, 5 USCMA 448, 18 CMR 72; United States v Smith, 12 USCMA 127, 30 CMR 127. Further, as the board also noted, accused's providently entered pleas of guilty are themselves sufficient to support the findings. United States v Lucas, 1 USCMA 19, 1 CMR 19; United States v Cruz, 10 USCMA 458, 28 CMR 24. Clearly the accused was in no way prejudiced by the sergeant's entry into the closed session, and we must rule against the accused on his first assigned error.

## II

The second question presented for our determination concerns the claim by accused that:

"THE RECONVENING OF THE COURT FOR THE PURPOSE OF INCREASING THE SEVERITY OF THE SENTENCE WAS ERROR."

With regard to that matter the transcript reflects the sentence, as originally announced by the president of the court-martial, purported to impose the following penalties against accused:

"To be discharged from the service with a bad conduct discharge; to forfeit $55 per month for six months; to be reduced to the grade of Airman Basic."

This announcement, made when the court reopened at 11:00 a.m. after sentence deliberations, was followed immediately by the defense motion for mistrial, discussed earlier. Twenty minutes later, after said motion was denied, the court-martial was adjourned.

At 12:22 p.m., barely more than an hour later, the record shows that the court-martial reconvened. It developed that the sentence work sheet, used by the court-martial and included in the record as an appellate exhibit, contained a discrepancy indicating the possibility of a mistake in the announcement of sentence. Specifically, the top portion of the exhibit indicated that the sentence voted by the court-martial included confinement at hard labor for six months, whereas the written statement of the sentence at the bottom of the work sheet—which apparently was utilized by the president in announcing the sentence quoted above—did not mention confinement.

Upon inquiry into the matter, it was determined that the court-martial had indeed voted a sentence including six months' confinement. It has been overlooked that the handwritten statement on the work sheet failed to list the confinement portion of the penalty voted. And it likewise escaped the members' attention that the sentence announced mistakenly omitted the imprisonment factor.

Defense counsel's vehement objections to the entire proceedings, and his argument that the same constituted an improper reconsideration of the sentence, were unavailing. When it was ascertained that the six months' confinement actually voted by the court-martial had been inadvertently omitted from the sentence announced, the court granted trial counsel's motion to correct and reannounce the sentence to make it conform to the punishment in

**501**

fact originally voted on and intended. Accordingly, the president announced that accused's sentence was:

". . . To be discharged from the service with a bad conduct discharge; to forfeit $55 per month for six months; to be confined at hard labor for six months, and to be reduced to the grade of Airman Basic, as is indicated in Item 14 of Appellate Exhibit number 4."

In short, the net of the additional proceedings was that six months' confinement, not originally announced as part of accused's punishment, was included in his sentence.

Article 62(b), Uniform Code of Military Justice, 10 USC § 862, reads as follows:

"(b) Where there is an apparent error or omission in the record or where the record shows improper or inconsistent action by a court-martial with respect to a finding or sentence which can be rectified without material prejudice to the substantial rights of the accused, the convening authority may return the record to the court for appropriate action. In no case, however, may the record be returned—

(1) for reconsideration of a finding of not guilty of any specification, or a ruling which amounts to a finding of not guilty;

(2) for reconsideration of a finding of not guilty of any charge, unless the record shows a finding of guilty under a specification laid under that charge, which sufficiently alleges a violation of some article of this chapter; or

(3) for increasing the severity of the sentence unless the sentence prescribed for the offense is mandatory."

In connection with the same subject, paragraph 76c, Manual for Courts-Martial, United States, 1951, provides:

"Announcing sentence.—As soon as it has determined the sentence, the president will announce the sentence in open court in the presence of the law officer, the accused, and the counsel for both sides. Only the required percentage of members who concurred in the sentence should be announced. If the law officer of a general court-martial notes any ambiguity or apparent illegality in the sentence as announced by the court, he should bring the irregularity to the attention of the court so that it may close to reconsider and correct the sentence. The court may not, however, reconsider the sentence with a view to increasing its severity after the sentence has been announced unless the sentence prescribed for the offense of which the accused has been convicted is mandatory (Art. 62b). In a trial by special court-martial, an ambiguous or apparently illegal sentence may be called to the attention of the court by the trial counsel.

"Within the limitations prescribed in this paragraph, the court may reconsider a sentence on its own motion at any time before the record of trial has been authenticated and transmitted to the convening authority. In such a case, however, all personnel of the court, the accused, counsel for both sides and, in a general court-martial, the law officer must be present."

Before directing our attention to the merits of this issue, we pause to consider appellate defense counsel's initial quarrel with the prosecutor's action at trial. They point out that the proceedings were reconvened at trial counsel's behest for the purpose of inquiring into the correctness of the announced sentence. Defense counsel strenuously objected to the additional proceedings at the time, and it is here submitted that, while such action is the prerogative of the convening authority or court-martial on its own motion,[2] trial counsel was without authority to reconvene the court-martial for that purpose.

This procedural argument need not

---

[2] See Article 62(b), Uniform Code of Military Justice, 10 USC § 862, and paragraph 76c, Manual for Courts-Martial, United States, 1951; see also paragraph 80c, Manual for Courts-Martial, supra.

detain us long. It is clear from the record that, after trial counsel ██ became aware of the internal inconsistency on the sentence work sheet and the possibility of a mistake, he brought the matter to the attention of the president and suggested that the court members reconvene. We do not understand the defense to suggest that the court-martial was powerless to do so and, while trial counsel broached the matter and gave the president advice, certainly trial counsel did not reconvene the court. Nor did the convening authority or any other outside influence play any part in the court-martial's action. The motivation and decision to reconvene, once they became aware of the inadvertent misannouncement, was entirely that of the court members.

We therefore reject this attack on the validity of the revision proceedings, and turn to the substance of the second assignment of error.

· The defense points out that the sentence initially announced was within the jurisdiction of the court-martial and the maximum permissible punishment, and was a valid and legal sentence on its face. Accordingly, appellate defense counsel argue there was no occasion for revision thereof, as they urge the law contemplates such action only "where the announced sentence is patently illegal or inconsistent," a situation not true in the case at bar. Additionally, appellate defense counsel assert that the addition of confinement to the punishment imposed against accused constituted an unlawful increase in the severity of the previously announced sentence, in violation of Article 62(b)(3) of the Code, supra.

It may be noted that these are but reiterations of essentially the same argument made by the defense to the court-martial, in contending that the erroneous announcement "froze" accused's sentence and rendered addition of a confinement factor legally impermissible. As defense counsel argued for his client at trial:

"I would like to re-emphasize a point in this; that it is the sentence that was orally given in this court, which is the sentence which is adjudged, and it isn't the sentence which it might be the intent of the court members at the time the sentence was given; rather, what is orally stated to the accused at the time of announcing the sentence in open court."

This is not the first occasion this Court has been confronted with such a contention. United States v Robinson, 4 USCMA 12, 15 CMR 12, involved a similar situation, and is helpful in resolving the issue presently before us. In that instance a valid and legal sentence had been announced and the court-martial adjourned. Two minutes later, court was reopened and the president stated he had erroneously announced the sentence due to what he characterized as clerical and verbal error. He proceeded to announce the "correct" sentence which substantially increased the total amount of forfeitures.

Confronted with such a "slip-of-the-tongue" error, this Court had:

"... no difficulty concluding that there was not a reconsideration of the sentence in this case. A reconsideration involves something more than a change in phraseology necessary to express truly the sentence actually agreed upon and that is all we have here. A procedure cannot be made so technical and inflexible that a court-martial is denied the power to correct a sentence inadvertently pronounced. ..." [United States v Robinson, supra, at page 15.]

Just as we held in United States v Downs, 4 USCMA 8, 15 CMR 8, that a court-martial may properly correct an erroneous announcement of its decision so as to reflect the true findings, so, too, in *Robinson*, we permitted correction of a sentence—wholly valid and legal as originally but erroneously announced—so as to reflect the punishment actually voted by the court-martial in its deliberations. Such action, it is clear, does not constitute a proscribed "reconsideration" nor an improper increase in severity of the sentence, as forbidden by the Code and the Manual.

In the face of that authority, the position of the defense in the case at bar cannot be accepted. █ There was, indeed, in the present instance, a further closed session and secret vote after the original announcement of sentence. But it is to be noted that this action was pursuant to the defense counsel's demand, and it was made abundantly clear that this vote was not for the purpose of redetermining the sentence originally agreed upon. The sole extent of the additional proceedings, as reflected by the transcript, was to correct the inadvertent and mistaken announcement, and impose the sentence the court members had actually voted for initially.

It is evident that inclusion of confinement in accused's sentence did not constitute a "reconsideration" of his punishment, and plainly there is no merit to the position that there may be no correction of a mistakenly announced sentence which appears valid on its face.

Nor are we deterred, in the conclusion we reach, by the fact that the court members in the present █ case left the courtroom after the initial adjournment, whereas in *Robinson*, supra, the parties to the trial had not yet departed from the scene. In that connection appellate defense counsel draw an analogy between a civilian jury and the members of a court-martial, and argue that the general rule forbids recall of jurors after discharge to amend a verdict, unless they have not dispersed.[3]

The analogy is inappropriate, for a jury loses its identity as such upon its discharge,[4] whereas the same is not true of a court-martial. See Manual for Courts-Martial, United States, 1951, paragraph 37c(1). A more nearly accurate comparison is the one made in *Robinson* to pronouncement of sentence by a Federal judge.

Nevertheless, in the case at bar the members of the court-martial did disperse after the initial adjournment, whereas in *Robinson* they did not. And in the last-mentioned case, because of that circumstance, this Court went "no further than to hold that the correction can be effected if the accused, his counsel and the court members have not departed from the courtroom." United States v Robinson, supra, at page 17. In fact that same circumstance was among the factors which obviously prompted our caveat that vigilance was required to prevent abuses in the form of the danger of possible external influence on the court members, or change of heart by them with desire to increase the punishment.

Notwithstanding the dispersement and passage of time, however, we have here even stronger evidence ruling out the potentiality of unfairness to accused, than was present in *Robinson*. There the short period of time, failure to separate, and availability of the court members for questioning, ruled out any risk that there was outside interference or that the procedure was a ruse to increase punishment. In the case at bar, the court members were equally available for inquiry, and there is not even a suggestion that confinement was missing from the sentence originally agreed upon. But more striking, the sentence work sheet itself —uncontrovertible physical evidence made contemporaneously with the initial determination of punishment— makes it crystal clear the confinement portion of the sentence was no afterthought nor the result of outside influence. Nor does the elapse of sixty-two minutes[5] or the dispersement in this

---

[3] Our attention is invited to Ex parte Brown, 139 Kan 614, 32 P2d 507; Henry v State, 94 Fla 783, 114 So 523; Allen v State, 85 Wis 22, 54 NW 999; Commonwealth v Martin, 379 Pa 587, 109 A2d 325; Melton v Commonwealth, 132 Va 703, 111 SE 291; Summers v United States, 11 F2d 583 (CA 4th Cir); State v Fornea, 242 La 978, 140 So 2d 381. See also Allison v State, 143 Tex Crim

4, 156 SW2d 527; Limeberry v State, 223 Ind 622, 63 NE2d 697.

[4] See Allison v State, cited by the defense and listed in the prior footnote, 156 SW2d at page 528.

[5] The twenty minutes until adjournment after the original announcement of sentence clearly may not be counted. That delay is attributable solely to the defense as the court-martial was occu-

case militate against our conclusion. While there obviously must be some point beyond which correction should not be permitted, an hour's time alone —in the face of the foregoing guarantees and in the absence of any change of position or status of accused—surely does not require a different result. Neither does separation. Indeed, we note that in Rowley v Welch, 114 F2d 499 (CA DC Cir) (1940), the defendant had been gone from the courtroom for half an hour before the trial judge corrected his mistake in announcing sentence.

Here, as in *Robinson,* it is unnecessary to fix any precise terminal point for correction of the mistakenly announced sentence. We hold simply that, under the circumstances presently before us, there is no fair risk that abuse crept into the picture. The record shows beyond peradventure that the court-martial acted entirely on its own volition in reconvening to correct a happenstance erroneous announcement. Clearly there was no interference from any interloper or other outside source. All the court-martial did was to re-announce the sentence to correctly reflect the punishment actually determined by the court-martial in the first instance. The posture of this record does not entitle accused to the benefit of the court-martial's initial mis-spoken words. United States v Robinson, supra; Rowley v Welch, supra.

Accordingly, and for the above stated reasons, we agree with the board of review, which also considered the question, and resolve the second assigned issue adversely to accused.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

While I agree with their disposition of the first issue, I am unable to join with my brothers in their decision that a court-martial may be reconvened after

pied during that period with the motion discussed in part I of this opinion.

dispersal of its members for the purpose of correcting the announcement of its sentence, when such action has the effect of increasing the severity of the penalty adjudged. In my opinion, the procedure which they approve violates the command of Congress in Uniform Code of Military Justice, Article 62, 10 USC § 862, which provides pertinently:

"(b) Where there is an apparent error or omission in the record . . . the convening authority may return the record to the court for appropriate action. In no case, however, may the record be returned—

. . . . .

(3) *for increasing the severity of the sentence unless the sentence prescribed for the offense is mandatory."* [Emphasis supplied.]

The legislative history of the foregoing Article makes clear that Congress intended no such corrections be allowed unless the court-martial erroneously failed to impose a mandatory sentence. The following comments from the hearings before the House Armed Services Committee are dispositive:

"Mr. LARKIN. That is right. In other words, the first sentence would have been an illegal one in that the court did not follow the mandatory requirement of sentence. I think it occurs only in the two or three instances where the death penalty is mandatory.

"If the first court did not give that mandatory sentence, then upon a rehearing the second court could give what amounts to a more severe sentence by following the mandatory provisions. *Otherwise, no sentence can be increased even though it was less than is authorized.*

. . . . .

"Mr. LARKIN. That is right. But there are so few mandatory provisions that it would only work in the mandatory death case. *Where the sentences are discretionary within a maximum, the first sentence imposed binds the rehearing as to the sentence."* [Emphasis supplied.] [Hearings before House Armed Services

Committee on H. R. 2498, 81st Congress, 1st Session, pages 1178–79.]

The greatest criticism leveled against military criminal law as administered under the Articles of War and Articles for the Government of the Navy was the interference by military command in questions relating to the findings and sentences returned by courts-martial. House Hearings, supra, pages 597, 605. Congress showed particular concern with attempts by those charged with military justice duties to obtain heavy sentences under the guise of appropriate punishment. United States v Littrice, 3 USCMA 487, 13 CMR 43; House Hearings, supra, at page 634. A number of measures to eliminate this unwarranted interference with military judicial proceedings were included in the Uniform Code. Chief among these were, of course, Code, supra, Article 37, 10 USC § 837, and Code, supra, Article 98, 10 USC § 898. But Congress also recognized and discussed at length the dangers inherent in allowing return of records to courts-martial for reconsideration of adjudged sentences. House Hearings, supra, pages 1178, et seq. In consequence, it continued in effect the provision against reconsideration of sentences and, as indicated both by the comments of Mr. Larkin, quoted above, and the plain wording of the statute, limited such action to instances in which the punitive article involved carried a mandatory penalty.

Nor is our decision in United States v Robinson, 4 USCMA 12, 15 CMR 12, or in United States v Downs, 4 USCMA 8, 15 CMR 8, in any way inconsistent with the construction which I believe Code, supra, Article 62, demands. In the first case, the purported error was caught before the members of the court-martial had departed from the courtroom. In the second, it was corrected immediately after the announcement. Under such circumstances, there was no dispersal of the court and no opportunity for the evil to creep in which Congress sought to prevent. Here, however, the court-martial had not only been formally adjourned but the members had to be sought out at other places and reassembled. Under such circumstances, there is a clear reconsideration of the sentence and, while there may be no hint of command interference shown here, one cannot deny that the ultimately adjudged penalty is more severe than the originally announced sentence to the extent of the six months' confinement at hard labor.

The rule in the United States courts is, of course, different. There, the judge may reconsider sentences and correct errors made by him in delivering his judgment. Bozza v United States, 330 US 160, 91 L ed 818, 67 S Ct 645 (1947); Oxman v United States, 148 F2d 750 (CA 8th Cir) (1945); Rowley v Welch, 114 F2d 499 (CA DC Cir) (1940). But a United States district judge does not operate under the same conditions as a member of a United States court-martial. He is legally trained, appointed for life, and has behind him a tradition of judicial independence extending backward to the creation of this Nation. On the other hand, the military court member is appointed on an *ad hoc* basis to hear one or more cases by the very commander who also holds his military future in his hand. And he is heir to a tradition which marked out a court-martial as nothing more than a committee to examine into the facts and carry out the wishes of its military superiors. Indeed, as Colonel Winthrop notes, at one time, it was "as much subject to the orders of a competent superior as is any military body or person." Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 49.

There can certainly be no doubt that Congress recognized this distinction and was demonstrably worried about the independence of courts-martial when it enacted the Uniform Code of Military Justice. With its passage of Code, supra, Article 62, I think it hardly arguable that it intended for the court to be able to finish a case, adjourn, disperse, and then come together once again for the purpose of correcting an error which has the effect of increasing the severity of a legal and unambigu-

506

ous sentence. The statute forbids precisely that course of action and I, for one, cannot agree that there is implied in its plain language any exception for instances of erroneous announcements.

Of course, there may well be no untoward motive involved here. The facts indicate its absence. Indeed, any decision which we reach will be of little practical value to the accused, for, by the time the record wended its way here, the term of confinement imposed had been served, leaving little room for satisfactory relief in the event of a reversal. But the matter of principal involved is extremely important. If we leave the door open to changes in the sentence to accused's detriment one hour after the court has adjourned and dispersed, the same procedure might be followed after the elapse of one day, one week, or one month. Time is not the governing consideration. The important question is whether Congress forbade the reconsideration of a sentence after the court-martial had adjourned, with a view to increasing its severity. In my opinion, it did precisely that in Code, supra, Article 62, and I would enforce its absolute prohibition in this case quite without regard to the motivation of the court in reassembling and announcing the additional penalty. When my brothers make the matter depend upon when an error is noted and the moving force behind the increase in punishment, they reopen the door to abuses which, I predict, will not be long in coming to the fore.

In sum, then, I disagree with the narrow interpretation by the majority of the term "reconsideration" as used in connection with Code, supra, Article 62. To my fellow Judges, it apparently is limited to actual revocation of an announced penalty and substitution of a more severe punishment. In my opinion, Congress intended it to have the broader connotation of reconvening and adjudging any more serious sentence, unless mandatorily required. The uncorrected announcement becomes, in my view, authoritative and final once the court-martial has finally dispersed and lost its identity as a sentencing authority. Such may give the accused the benefit of a "slip of the lip," but the proper remedy is to teach the lip not to slip—not that its solemn and final judgments may be freely corrected.

I would affirm only so much of the decision of the board of review as approves the originally announced sentence of the court-martial and hold it prejudicially erroneous for that body to reconvene and announce a new sentence in which confinement at hard labor was for the first time included.