UNITED STATES, Appellee

v.

Russell T. SPAUSTAT, Staff Sergeant
U.S. Air Force, Appellant

No. 01-0656

Crim. App. No. 34036

---

United States Court of Appeals for the Armed Forces

Argued December 11, 2001

Decided August 30, 2002

GIERKE, J., delivered the opinion of the Court, in which
EFFRON and BAKER, JJ., joined.  SULLIVAN, S.J., filed an
opinion concurring in part and in the result.  CRAWFORD,
C.J., filed an opinion concurring in the result.

<u>Counsel</u>

For Appellant:  Major Jeffrey A. Vires (argued); Lieutenant
Colonel Beverly B. Knott and Lieutenant Colonel Timothy W.
Murphy (on brief).

For Appellee:  Captain Adam Oler (argued); Colonel Anthony P.
Dattilo and Major Lance B. Sigmon (on brief).

Military Judge:  Michael A. Kilroy

**This opinion is subject to editorial correction before final publication.**

Judge GIERKE delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of a 47-day unauthorized absence, three specifications of violating a lawful general regulation by misusing his government credit card, and two specifications of dishonorably failing to maintain sufficient funds in his checking account, in violation of Articles 86, 92, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 892, and 934, respectively. The military judge sentenced appellant to a bad-conduct discharge, reduction to the lowest enlisted grade, and confinement for a duration that is disputed in this appeal. The convening authority approved the sentence, and the Court of Criminal Appeals affirmed in an unpublished decision.

Before this Court, appellant claims that the military judge illegally increased his sentence after announcing it, and incorrectly computed appellant's credit for illegal pretrial punishment. The issues arose from the military judge's attempts to compute how many days of post-trial confinement appellant would actually serve after all credits and deductions were applied to the adjudged sentence. In the course of describing his calculations, the military judge discussed the interrelationship among several factors, including the adjudged sentence, confinement credits, the potential maximum sentence that could be approved, and the amount of time that might remain to be served. During this discussion, the military judge at various times referred to confinement for 10 months, 305 days, 212 days, 202 days, 102 days, 100 days, 50 days, and 40 days.

Appellant asserts that he served more confinement than was adjudged and approved, and he asks that his bad-conduct discharge be set aside because of illegal post-trial confinement.[1] For the reasons that follow, we affirm.

FACTUAL BACKGROUND

At trial, appellant requested relief for illegal pretrial punishment imposed in violation of Article 13, UCMJ, 10 USC § 813. The military judge granted the motion, finding that appellant was improperly denied his right to wear his staff sergeant stripes while in pretrial confinement, and that "his stripes were ripped off, literally in front of him." The military judge announced that "a one-for-one credit was awarded towards the adjudged sentence, which has been incorporated into the sentence of this court." The military judge then announced the sentence, which included confinement for 202 days. The military judge then commented:

> The accused has served 102 days of pretrial confinement. Using the directives in U.S. v. Allen, [17 MJ 126 (CMA 1994),] the accused will be awarded 102 days of credit towards the approved sentence to confinement. As a practical matter, that leaves 100 days to be served.

---

[1]The granted issues are:

    I. WHETHER THE MILITARY JUDGE ERRED IN THE MANNER IN WHICH HE CREDITED APPELLANT WITH ADDITIONAL TIME AGAINST CONFINEMENT BECAUSE OF ILLEGAL PRETRIAL PUNISHMENT IN VIOLATION OF ARTICLE 13, UCMJ.

    II. WHETHER THE MILITARY JUDGE ERRED IN INCREASING APPELLANT'S SENTENCE AFTER ANNOUNCEMENT.

    III. WHETHER THE ADJUDGED BAD-CONDUCT DISCHARGE SHOULD BE DISAPPROVED BECAUSE OF ILLEGAL POST-TRIAL CONFINEMENT.

Because appellant had pleaded guilty in accordance with a pretrial agreement, the military judge next examined the agreed sentence limitation. He explained the effect of the pretrial agreement to appellant as follows:

> In that document it states that, in agreement for your plea of guilty in your case, that no more than eight months of confinement would be approved, if confinement is adjudged. In this case, the Court approved ten months and gave you credit – in one type of credit for 102 days and additional credit for 102 days, but there was 10 months or 305 days of confinement. As I understand the Appendix, you could have no more than eight months. So, that's an additional 60 days to be reduced from your sentence. So, the most that the convening authority could approve is about 40 days. And that's rough, but somewhere in the ballpark of 42 or 43 days of additional confinement, beyond what you've already served.

Responding to trial counsel's concern about his computations, the military judge further explained:

> Well, let me – without getting into the actual days, this court basically sentenced the accused to 10 months confinement; gave 102 days of Allen credit; gave an additional 102 days of credit using the theory that there was a violation of Article 13. But when you back it up, there was a sentence to 10 months before the credits were applied. My understanding of the agreement that was entered to [sic], it would be no more than 8 months. It says that no more than 8 months will be approved, not served.
>
> *   *   *
>
> I'm sure that will leave the appellate folks with lots to talk about, but that's the understanding of this Court. Do you understand what's just taken place Sergeant Spaustat? I know that it sounds a little confusing. The Court sentenced you to 10 months, but gave you two different types of credit with the result that it would be about 102 days more or less that you would have remaining to be served. But because of your agreement with the convening authority, your sentence will be reduced further by an additional two months.

Trial counsel then pointed out that appellant's stripes were not removed until he had been in pretrial confinement for ten

4

days, and that the military judge had given appellant too much credit for pretrial punishment. The military judge agreed, saying:

> So, that 10 day period will be added back – I will restate my position. He will receive 92 days of credit, not 102 days under the theory that there was a violation of Article 13.

The military judge then "restated" the sentence, this time including confinement for 212 days. The court adjourned on November 30, 1999, with no further discussion of the sentence.

The military judge's sentence continued to be a matter of concern after the trial. On December 2, 1999, the Chief of Military Justice was asked "to explain the judge's sentence with regard to confinement to appropriately calculate SSgt Spaustat's release date." His explanation was as follows:

> The judge sentenced him to 212 days confinement, already taking into account his 92 days credit for illegal pretrial punishment. However, after reviewing the PTA [pretrial agreement], the judge stated that his original sentence prior to subtracting the 92 days for illegal pretrial punishment was 304 days (about 10 months) confinement. Therefore, SSgt Spaustat got an additional 60 days (2 months) off the top for the PTA, which capped the sentence to confinement at 8 months, leaving 244 days. Then he got the 92 days credit for illegal pretrial punishment and the 102 days credit for pretrial confinement, leaving him with 50 days remaining.
>
> You would still need to calculate his credit for "good time" served and subtract it from the 50 days. By my calculation he should get about 25 days of good time (5 months x 5 days per month), leaving him with 25 days to serve from the date of his trial on 30 Nov 99. That means SSgt Spaustat will be released on 24 Dec 99. However, you would need to confirm that my "good days" calculation is correct.

In a memorandum dated December 6, 1999, defense counsel agreed with the Chief of Military Justice's statement of the

5

adjudged sentence to confinement and the confinement credits for illegal pretrial punishment and lawful pretrial confinement. However, he disagreed with the calculation of the "good time" credit. Defense counsel argued that good time credit should be calculated on the full term of adjudged confinement, which, according to the defense counsel, was eight months, before any credits were considered. Defense counsel's calculation would have given appellant 40 days of good time credit, leaving only 10 days to be served.

On December 7, 1999, defense counsel wrote the military judge requesting clarification of appellant's sentence so that appellant's minimum release date from confinement could be determined. The record of trial does not reflect a response from the military judge. This memorandum reflects that the Chief of Military Justice and the defense counsel had agreed that appellant was entitled to 40 days good time credit, and that appellant would have had only 10 days confinement to serve after trial. This calculation would have required appellant's release from confinement on December 9, 1999. The confinement facility, however, had determined that appellant's minimum release date was February 12, 2000, based on the Report of Result of Trial, which reflected an adjudged sentence imposing 212 days of confinement, less 102 days of Allen credit.

On December 10, 1999, defense counsel requested appellant's release from confinement. The staff judge advocate (SJA) disagreed with defense counsel's calculations, taking the position that the announced sentence was 212 days, that the pretrial agreement had no effect, and that the 92 days credit

6

awarded by the military judge for pretrial punishment did not need to be factored into the equation a second time.  The SJA's calculation was the same as the confinement facility's, leaving 110 days to be served.

On December 20, 1999, the convening authority denied the defense request that appellant be released from confinement.  In part, that denial document stated:

> The 92-day credit is applied against the adjudged sentence, not against the pretrial agreement (PTA). Since the adjudged sentence minus the credit comes below the PTA, the PTA is inapplicable to any calculations of confinement period.

On December 22, 1999, the convening authority ordered appellant to be released from confinement on December 27, 1999, "to partially compensate [Airman Basic] Spaustat for the credit the judge gave him at his court-martial for the improper manner in which the confinement facility removed his stripes."

As late as February 4, 2000, the sentence was still a concern.  In a "Submission of Clemency Matters," defense counsel argued that appellant should have been released from confinement on December 9, 1999, but was not ordered released until December 27, 1999.  In an addendum to the post-trial recommendation, dated February 23, 2000, the SJA noted that his recommendation had correctly set forth the sentence "as adjudged," including 212 days confinement.

On March 21, 2000, the convening authority simply approved the sentence.  Consistent with the Report of Result of Trial and the SJA's recommendation, the promulgating order reflects that the adjudged sentence provided for 212 days of confinement.  The convening authority stated, "The remaining period of confinement

7

having been served, no place of confinement is designated."
There is no mention of any confinement credits in the convening
authority's action.

## DISCUSSION

The proper applications of credit for illegal pretrial
punishment and lawful pretrial confinement are questions of law,
reviewed de novo. See United States v. Rock, 52 MJ 154, 156-57
(1999); Allen, 17 MJ at 126. Interpretation of a pretrial
agreement also is a question of law, reviewed de novo. United
States v. Acevedo, 50 MJ 169, 172 (1999).

### 1. The Adjudged Sentence

We begin our analysis with the question whether the adjudged
sentence imposed confinement for 202 days, 212 days, 10 months,
or some other period. Although the military judge mentioned
various periods of confinement, appellant has focused on 202 days
and 212 days. Appellant asserts that the military judge
sentenced him to confinement for 202 days and then illegally
increased it to 212 days. The Government asserts that appellant
was sentenced to confinement for 10 months, amounting to 304
days. We hold that the adjudged sentence imposed confinement for
ten months.

Before announcing the sentence, the military judge stated
that the credit for unlawful pretrial punishment "has been
incorporated into the sentence of this court." The military
judge's first announcement of confinement for 202 days
incorporated his calculation of this credit. See United States
v. Suzuki, 14 MJ 491 (CMA 1983) (additional credit for pretrial
confinement under harsh conditions). The military judge then

deducted the Allen credit and told appellant that he had "100 days to be served."

Next, while explaining the pretrial agreement to appellant, the military judge stated that "the Court approved ten months . . . there was 10 months or 305 days of confinement," with 102 days of Allen credit and 102 days of Suzuki credit. After examining the pretrial agreement, he recomputed again and told appellant "the most that the convening authority could approve is about 40 days."

After trial counsel questioned his calculations, the military judge explained that he "basically sentenced the accused to 10 months confinement," but that after deducting Suzuki and Allen credit, appellant would have "102 days more or less" to serve, less the reduction required by the pretrial agreement. The military judge also told appellant again, "The Court sentenced you to 10 months."

Finally, after trial counsel pointed out that the Suzuki credit was calculated incorrectly, the military judge agreed that he had given appellant too much Suzuki credit, and he "restated" the sentence to provide for confinement for 212 days. This computation included the corrected Suzuki credit but not the Allen credit or the sentence reduction under the pretrial agreement.

Defense counsel did not raise any issue about the adjudged sentence until after the trial. In his post-trial memorandum, defense counsel agreed with the Chief of Military Justice's statement that the "original sentence" provided for ten months of confinement.

The record clearly reflects that the military judge adjudged a sentence including confinement for ten months. There is no ambiguity regarding the adjudged sentence. The military judge's references to various days of confinement do not reflect the adjudged sentence, but instead they reflect his attempts to calculate how many days of confinement appellant would actually serve after his court-martial. Thus, we will review the military judge's application of confinement credits and the pretrial agreement on the basis of an adjudged sentence imposing confinement for ten months.

### 2. Unlawful Reconsideration of the Sentence

Appellant asserts that the military judge unlawfully reconsidered his sentence and increased the adjudged confinement from 202 days to 212 days. The Government asserts that the announced sentence included the military judge's computation of confinement credits against the adjudged sentence, and the change from 202 days to 212 days reflected the military judge's recalculation of confinement credits and not a change in the adjudged sentence.

We hold that the military judge did not illegally reconsider his sentence. He merely corrected his calculation of Suzuki credit. After trial counsel pointed out that appellant's stripes were not removed until he had been in pretrial confinement for ten days, the military judge recalculated the Suzuki credit and announced the sentence again, incorporating the Suzuki credit but adding ten days to the announced sentence to reflect the corrected calculation. The adjudged sentence remained unchanged at ten months.

In short, the military judge did not increase the sentence. The only "increase" resulted from the military judge's calculation of the credits against the adjudged sentence, not the sentence itself. The military judge modified the credits when it was brought to his attention that he had miscalculated them. RCM 1007(b), Manual for Courts-Martial, United States (2000 ed.),[2] provides: "If the announced sentence is not the one actually determined by the court-martial, the error may be corrected by a new announcement made before the record of trial is authenticated and forwarded to the convening authority." RCM 1009(c) provides: "A sentence may be clarified at any time prior to action of the convening authority on the case." See also United States v. Jones, 3 MJ 348, 351 (CMA 1977); United States v. Liberator, 14 USCMA 499, 505, 34 CMR 279, 285 (1964); United States v. Robinson, 4 USCMA 12, 15, 15 CMR 12, 15 (1954). In this case, the military judge corrected his calculation of confinement credits and clarified their impact on the confinement remaining to be served.

### 3. Application of Suzuki Credit

The decision in Suzuki, supra, involved pretrial confinement under harsh conditions. That decision is "explicitly recognized" in RCM 305(k), which, among other things, empowers a military judge to "order additional credit for each day of pretrial confinement that involves an abuse of discretion or unusually harsh circumstances." See Rock, 52 MJ at 156. RCM 305(k), which

---

[2] All provisions of the Manual are the same as those in effect at the time of trial.

covers violations of administrative procedures for imposing and reviewing pretrial confinement as well as Suzuki credit, specifically provides for credit to be applied against the adjudged sentence.

Rock involved a military judge's award of confinement credit for pretrial punishment in violation of Article 13, supra, where the accused was not in pretrial confinement nor held for trial in conditions tantamount to confinement. This Court held that, because the pretrial punishment "did not involve confinement, nor was it tantamount to confinement," the military judge did not err by awarding confinement credit against the adjudged sentence instead of the lesser sentence required by the pretrial agreement. We stated further, however, that when there is a pretrial agreement, credit for lawful pretrial confinement (Allen credit), as well as additional credit for illegal pretrial confinement (Suzuki credit), must be applied against the lesser of the adjudged sentence and the maximum sentence provided for in the pretrial agreement, unless the pretrial agreement provides otherwise. 52 MJ at 157.

The two separate opinions in this case correctly point to the statement in Rock that "credit against confinement awarded by a military judge always applies against the sentence adjudged-- unless the pretrial agreement itself dictates otherwise." Id. at 156-57. However, they omit the remainder of the Rock opinion's discussion, which addresses the circumstance where the pretrial agreement provides for a sentence less than the adjudged sentence. Rock explains:

> Where there is a pretrial agreement that sets out a lesser limitation than that adjudged by the court-martial, however, a different result obtains. Where the agreement establishes a maximum confinement, for example, that is less than that adjudged by the court-martial, that lesser limit becomes the maximum total confinement that the accused lawfully can be made to serve. Where portions of that confinement have already been served, actually or constructively, <u>the credit applies against the agreement, otherwise the accused's sentence will exceed the maximum lawful limit</u>.

<u>Id</u>. at 157 (emphasis added).

<u>Rock</u> arguably gives more relief than RCM 305(k). However, it is not inconsistent with RCM 305(k), because RCM 305(k) specifically authorizes more than day-for-day credit for <u>Suzuki</u> violations, and it does not address the impact of a pretrial agreement on the application of confinement credits.

In this case, the military judge awarded additional credit for pretrial punishment unlawfully imposed on appellant while he was in pretrial confinement. The military judge initially stated that he would apply the credit against the adjudged sentence, but when he announced his calculations, he actually applied it against the lesser sentence provided for by the pretrial agreement. The Government asserts that appellant received a windfall because the military judge erroneously applied <u>Suzuki</u> credit against the lesser sentence provided for in the pretrial agreement instead of the adjudged sentence of confinement for ten months.

We do not agree with the Government's assertion that the military judge gave appellant a windfall. Because appellant was stripped of his status as a noncommissioned officer as an incident of his pretrial confinement, making the conditions of confinement more onerous, we hold that the military judge's

decision to apply Suzuki credit against the lesser sentence provided for in the pretrial agreement was consistent with Rock.

### 4. Application of Allen Credit

The parties agree that appellant was entitled to day-for-day credit (Allen credit) for 102 days of pretrial confinement. See Allen, 17 MJ at 128. Under the Rock guidance, such credit must be applied against the lesser of the adjudged sentence or the sentence limitation in the pretrial agreement. Appellant asserts that the Allen credit must be applied against the 202 days of confinement that was announced. The Government asserts that the military judge correctly applied the Allen credit against the eight-month sentence limitation, which is less than the ten-month sentence that was adjudged. In light of our holding that the adjudged sentence provided for ten months of confinement, we hold that the military judge's decision to apply the Allen credit against the eight-month limitation in the pretrial agreement was consistent with Rock.

### 5. Computation of "Good Time" Credit

The parties agree that appellant was entitled to 5 days of "good time" credit for each month of confinement, but they disagree on the question whether it should be computed on the basis of the sentence limitation in the pretrial agreement (8 months) or the sentence announced by the military judge and purportedly approved by the convening authority (212 days). Appellant asserts that he was entitled to 40 days of credit, 5 days for each of the 8 months of confinement provided for in the pretrial agreement. The Government asserts that appellant was entitled to five days of credit per month of the approved

sentence.    Since the convening authority purported to approve a sentence that included confinement for 212 days, the Government asserts that appellant was entitled to, at most, 21.5 days of good time.[3]   The Court of Criminal Appeals concluded that appellant had 50 days of post-trial confinement to serve after sentence was imposed, less good time of 21.5 days.[4]   The court below concluded that appellant was released from confinement one day early.

---

[3] The Government's calculation is as follows:

> Appellant entered pretrial confinement on 19 August 1999, Keesler time, 20 August 1999 Osan time.  By virtue of crossing the international dateline, Appellant lost a day. That is, he spent 24 fewer hours in confinement because one calendar day was removed from his calendar.  He left confinement on 27 December 1999.  Therefore, he served four months and seven days in confinement.  Someone sentenced to less than 1 year in confinement is entitled to five days per month good time.  Therefore, for the four full months he served, Appellant was entitled to 20 days. (4 x 5 = 20). The residual seven days, according to the table found on page 9 of [Air Force Regulation 125-30] provide Appellant with one additional day.  The Air Force Court granted another half day without explanation.  However, given Appellant's crossing of the international dateline, provision of the half day was arguably equitable.

Final Brief at 12 n.3.

[4] The Court of Criminal Appeals's calculation was as follows:

```
      304 days of confinement determined by the Judge
      -92 days for RCM 305(k) credit
      212 days of confinement
     -102 days for Allen credit
      110 days
      -60 days (Difference between the judge's basis for
                 confinement and the limitation on confinement
                 in the Pretrial Agreement)
       50 days of confinement
     -21.5 days credit for good time served
      28.5 days of confinement to be served
```

Unpub. op. at A7.

We need not resolve the disagreements about the computation of good time. The UCMJ and the Manual for Courts-Martial make no provision for good time credit. The responsibility for determining how much good time credit, if any, will be awarded is an administrative responsibility, vested in the commander of the confinement facility. See Air Force Joint Instruction 31-215, Military Sentences to Confinement (November 1964); see also Air Force Instruction 31-205, The Air Force Corrections System (April 9, 2001). Military penal practice parallels federal civilian practice, which vests responsibility for decisions regarding good time credit in the prison warden. See 18 USC § 4161; 28 CFR Part 523 (2001).[5] Before a civilian prisoner may obtain judicial review of a decision regarding good time credit, the prisoner must exhaust all available administrative remedies. Judicial review of disputes about good time credit occurs only upon application for an extraordinary writ, not on direct review of the sentence. See generally United States v. Wilson, 503 U.S. 329, 337 (1992) (review of pretrial confinement credit); Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (review of good time determination).

Because appellant has been released from confinement, the only issue is whether he is entitled to sentence relief to compensate him for illegal post-trial confinement from December 10 to December 27, 1999. We hold that, even if

---

[5] The statutory basis for good time credit in federal civilian facilities was repealed for offenses committed on or after November 1, 1987. Pub.L.No. 98-473, Title II, § 218(a)(4), 98 Stat. 2027 (1984).

appellant should have been released from confinement on December 10 instead of December 27, the additional days of confinement do not warrant granting his request to set aside his bad-conduct discharge. See RCM 305(k) (limiting remedies for unlawful pretrial confinement to credits against confinement, hard labor without confinement, restriction, fine, and forfeiture of pay); United States v. Rosendahl, 53 MJ 344, 348 (2000) (appellant not entitled to have punitive discharge set aside as credit for "relatively short" period of pretrial confinement where no post-trial confinement was adjudged; punitive discharge is "qualitatively different" from confinement); see also United States v. Smith, 56 MJ 290 (2002) (no constitutional, statutory, or regulatory right to have punitive discharge set aside as credit for pretrial confinement where no post-trial confinement was adjudged).

### 6. Application of Credits in Future Cases

This case illustrates that, even after Rock, there is some confusion about the application of confinement credits when a pretrial agreement is involved. Furthermore, we recognize that applying confinement credit against the adjudged sentence in cases where there is a pretrial agreement can produce anomalous results, and it can deprive an appellant of meaningful relief for egregious violations of Article 13 or RCM 305. If credits for such violations are applied against the adjudged sentence instead of the lesser sentence required by the pretrial agreement, then in some situations, an accused may not receive meaningful relief if the sentence reduction under the pretrial agreement is greater than the credit awarded for the violation. See Rock, 52 MJ at

157-58 (Effron, J., concurring in part and in the result).  This Court's <u>Suzuki</u> decision contemplates effective, meaningful relief.  14 MJ at 493.  Accordingly, in order to avoid further confusion and to ensure meaningful relief in all future cases after the date of this decision, this Court will require the convening authority to direct application of all confinement credits for violations of Article 13 or RCM 305 and all <u>Allen</u> credit against the approved sentence, <u>i.e.</u>, the lesser of the adjudged sentence or the sentence that may be approved under the pretrial agreement, as further reduced by any clemency granted by the convening authority, unless the pretrial agreement provides otherwise.[6]

## DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

---

[6] With respect to the possibility that an accused might seek to obtain double credit -- once when negotiating a pretrial agreement and again when asking for credit at trial, we note that a convening authority may insist that the pretrial agreement preclude a double credit.  For example, when a pretrial agreement includes a confinement cap that includes a defense-requested credit, the convening authority may require that the agreement provide that any similar credit ordered by the military judge will be applied against the adjudged sentence, not the sentence cap in the pretrial agreement.

United States v. Spaustat, No. 01-0656/AF

SULLIVAN, Senior Judge (concurring in part and in the result):

The first granted issue asks whether the military judge erred in considering appellant's unlawful pretrial punishment as a mitigating factor in determining his adjudged sentence. See RCM 1002 and 1001(c)(1)(B), Manual for Courts-Martial, United States (1998 ed.).[1] Such a sentencing approach was permissible prior to the decision of this Court in United States v. Rock, 52 MJ 154, 157 (1999). See Michael G. Seidel, Giving Service Members the Credit They Deserve:  A Review of Sentencing and Its Application, The Army Lawyer 1, 2-3, 12-13 (Dept. of the Army Pamphlet 27-50-321  Aug. 1999).

The opinion of this Court in United States v. Rock, supra, however, arguably precluded such action by a military judge.  It specifically held that, absent a pretrial agreement to the contrary, unlawful pretrial punishment unrelated to confinement was to be treated as a sentence credit against the adjudged sentence.  See, e.g., United States v. Larner, 1 MJ 371, 374-75 (CMA 1976).  In dicta, it suggested that, absent an agreement to the contrary, unlawful pretrial punishment related to confinement was to be treated as a credit against the maximum

---

[1] The current version of each Manual provision cited is identical to the one in effect at the time of appellant's court-martial.

United States v. Spaustat, No. 01-0656/AF

sentence provided in the pretrial agreement.  United States v. Rock, supra.[2]


Here, appellant's unlawful pretrial punishment was related to his pretrial confinement.  However, contrary to appellant's assertion, the military judge did not consider it as a mitigating factor in arriving at an adjudged sentence.  Here, the military judge considered it as a sentence credit against the adjudged sentence, in addition to a sentence deduction from the adjudged sentence which he allowed for a favorable sentence limitation in the pretrial agreement.  Accordingly, I agree with the majority that the first granted issue is without merit, and United States v. Rock, supra, was effectively complied with in this case.


The second granted issue is "whether the military judge erred in increasing appellant's sentence after [its] announcement" at his court-martial from 202 days to 212 days.  I agree with the majority and the Court of Criminal Appeals that the record in this case shows that appellant was sentenced by

---

[2] Unlawful pretrial punishment might also be considered by the convening authority in arriving at a maximum sentence to be approved in a pretrial agreement or exercising clemency in his approval action under Article 60 (c)(1), Uniform Code of Military Justice, 10 USC § 860(c)(1); see RCM 1107(b), Manual, supra.  Dicta in United States v. Rock, supra, arguably precludes or discourages such action by a convening authority.

2

the military judge to 10 months' confinement, not 202 or 212 days as argued by appellant. Moreover, the trial judge's comments concerning a sentence of 212 days vis à vis 202 days were clearly directed to the computation of the sentence appellant would actually serve. See Article 57(b), Uniform Code of Military Justice, 10 USC § 857(b); cf. Article 53, UCMJ, 10 USC § 853. In my view, the second granted issue is without merit, although the convening authority action and the promulgating order in this case should be corrected.

The third granted issue asks "whether the adjudged bad-conduct discharge should be disapproved because of illegal post-trial confinement." Here, appellant avers that he was unlawfully confined after his court-martial sentence had been served, from December 10, 1999, to December 27, 1999, a total of 18 days. I agree that this claim may be rejected on the basis of United States v. Rosendahl, 53 MJ 344 (2000). In Rosendahl, we held that 120 days of illegal pretrial confinement, which could not otherwise be applied against an accused's sentence, did not require the setting aside of his bad-conduct discharge.

Some further comment is warranted as a result of the questions raised in this case concerning the computation of the sentence that a military prisoner will actually serve. See

3

United States v. Spaustat, No. 01-0656/AF

Article 57(b), UCMJ.  I agree with the Court of Criminal

Appeals' general approach[3] in this case of computing the sentence

which had to be actually served by appellant.  See __ MJ at (16

n.4).  That Court applied various sentence credits to which

appellant

was entitled, including a 60-day deduction resulting from a

favorable sentence limit in his pretrial agreement, against the

adjudged sentence.  In my view, this approach is not only

correct, but it is consistent with well-established military and

civilian sentence computation practice.  See United States v.

Allen, 17 MJ 126, 129 (CMA 1984)(Everett, C.J.,

concurring)(lawful pretrial confinement credit); RCM 305(k)(RCM

305 violations); United States v. Rock, 52 MJ at 157 (Article

13, UCMJ, 10 USC § 813, violations unrelated to pretrial

punishment); see also United States v. Larner, 1 MJ at 374-75;

United States v. Kramer, 12 F.3d 130 (8th Cir. 1993).


        The majority takes a different approach to computing the

sentence a military prisoner will actually serve.  It relies on

dicta in United States v. Rock, supra, concerning the

application of sentence credits related to pretrial confinement

when a pretrial agreement is involved.  It holds that all

---

[3] I do not agree with the service appellate court's specific conclusion that
appellant was entitled to 21.5 days of good time credit, in light of his

4

United States v. Spaustat, No. 01-0656/AF

sentence credits should be applied against the approved sentence to determine the actual sentence to be served. I did not agree with the majority opinion in United States v. Rock, supra, nor its dicta, and I affirmed on different grounds.[4] 52 MJ at 158 (Sullivan, J., concurring in the result). I do not join the majority today in the transformation of that dicta into a broad new rule for all confinement credits.

In my view, the majority's new rule for computing courts-martial sentences to be served by military prisoners in future cases conflicts with language in our past cases and the Manual for Courts-Martial. Clearly, it violates the precise holding of the majority in United States v. Rock, supra. (In fact, if it were applied to Rock, he would have received 25 months of additional sentence credit.) In any event, I would prefer that our sentence computation rule be stated in terms traditionally understood in military and civilian law. All effective sentence credits, including credit resulting from a favorable sentence limitation in a pretrial agreement, should be successively applied against the adjudged sentence, unless the parties have provided for a different rule in the pretrial agreement.

---

adjudged sentence of 10 months and the agreed rate of 5 days per month.
[4] My view was that the military judge clearly did not intend to afford the appellant effective sentence credit for what he considered a technical

United States v. Spaustat, No. 01-0656/AF

In sum, it is my view that all sentence credits required by law should be initially applied against the adjudged sentence. In that group, I would include sentence credits for lawful and unlawful pretrial confinement, unlawful pretrial punishment, and RCM 305 violations.  In addition, discretionary sentence credits or deductions should then be applied against what is left of the adjudged sentence after the legal credits have been applied.  In this group, I would include deductions from a sentence resulting from sentence limitations in a pretrial agreement between the convening authority and an accused and deductions granted as an act of clemency by the convening authority.  In my view, this approach to the question of sentence computation, which was followed by the Air Force Court, is more faithful to existing military practice.  See United States v. Larner, supra; Department of Defense Instruction 1325.7, Administration of Military Correctional Facilities and Clemency and Parole Authority at Enclosure 7 (July 17, 2001)(Appendix A to the opinion); cf.  Seidel, supra at 2 n.21 (suggesting that "adjudged sentence" for purpose of sentence credit in Larner and RCM 305(k) really means "approved sentence").

---

violation of Article 13, UCMJ.  See United States v. Rock, 52 MJ 154, 158 (1999)(Sullivan, J., concurring in the result).

Unites States v. Spaustat, No. 01-0656/AF

CRAWFORD, Chief Judge (concurring in the result):

I agree with the majority that the record of trial reflects an adjudged sentence that included confinement for ten months; that there was no unlawful reconsideration of the sentence; that RCM 305(k), Manual for Courts-Martial, United States (2000 ed.), and the rationale of United States v. Rock, 52 MJ 154, 157 (1999), specifically provide for various credits to be applied against the adjudged sentence, including the day-for-day credit under United States v. Allen, 17 MJ 126 (CMA 1984), where appropriate; and that computation of "good time" credit is an administrative responsibility best left in the hands of a confinement facility commander.  However, rather than recognizing the ambiguity in the dicta in Rock, the Court, contrary to RCM 305(k), establishes a new rule which overlooks the authority of the President.[1]

RCM 305(k) clearly states that the remedy for a failure to: (1) provide a prisoner with counsel (RCM 305(f)); (2) provide that prisoner with notification and action by the commander regarding his or her confinement (RCM 305(h)); (3) review that pretrial confinement pursuant to RCM 305(i); or (4) provide a review by a military judge (RCM 305(j)), is a specific credit against the sentence adjudged.  See United States v. Southwick,

---

[1] See United v. Key, No. 01-0646, ___ MJ ___ n.* (2002)(Crawford, C.J., concurring in the result).

53 MJ 412, 418 (2000)(Crawford, C.J., "concurring ... as to Issue II").

In addition to the aforementioned administrative credits, there is credit pursuant to Allen, supra, for each day of lawful pretrial confinement; credit pursuant to United States v. Suzuki, 14 MJ 491 (CMA 1983), for illegal pretrial confinement; credit for pretrial confinement that involves an abuse of discretion or unusually harsh circumstances; and credit pursuant to United States v. Mason, 19 MJ 274 (CMA 1985), for pretrial restriction equivalent to confinement. The latter would not necessarily be known by the convening authority and would have to be litigated at trial. Cf. United States v. King, 57 MJ 106 (2002)(granting review on question whether Mason credit was applicable).

Furthermore, sentencing procedures in a court-martial[2] often result in the awarding of additional credit, such as for prior nonjudicial punishment. See RCM 1001(c)(1)(B); United States v. Pierce, 27 MJ 367 (CMA 1989); United States v. Gammons, 51 MJ 169 (1999). We do need a rule that clearly defines how credits are to be applied in future cases. However, unlike the majority, I believe that any rule, including the Allen rule, involving credits must be bottomed on the fundamental principle

---

[2] See Chapter X, Rules for Courts-Martial, Manual for Courts-Martial, United States (2000 ed.).

that the accused is the gatekeeper of the evidence and director of the sentencing drama.  See United States v. Chapa, 57 MJ 140 (2002)(burden on accused to raise issues of RCM 305 (non)compliance and focus the trial court on any violations). The majority's holding, coupled with prior decisions from our Court, e.g., Southwick and Rock, both supra, guarantee increased litigation and imaginative pretrial agreements for the foreseeable future.

In Rock, the appellant contended that "the military judge erred in applying the credit to the adjudged sentence, rather than to the limitation established by the pretrial agreement." 52 MJ at 155.  Rock had pleaded guilty in accordance with a pretrial agreement that limited his confinement to three years. The military judge credited Rock with eight months of confinement against the adjudged sentence as a result of pretrial conditions on appellant's liberty.  He then announced a sentence that included 53 months of confinement, which he "explained included 8 months of credit."  Id. at n.2.  Pursuant to the pretrial agreement, the convening authority approved confinement for three years.

We held "that neither the military judge nor the convening authority erred...."  Id. at 155.  We further held that "credit against confinement awarded by a military judge always applies against the sentence adjudged – unless the pretrial agreement

3

itself dictates otherwise." Id. at 156-57. Rock was a case where the defense was "successful in convincing the military judge to reduce the adjudged sentence due to the restraint [on liberty]." Id. at 157. "Had the adjudged sentence been lesser than the agreement, the pretrial restraint would have been effective in substantially reducing appellant's sentence." Id. We noted that pretrial restraint is a "useful bargaining tool," and "[f]or all we know, trial defense counsel engaged in exactly such negotiations in this case." Id.

Rock neither holds nor stands for the proposition that "successful" credit given pursuant to Allen, Mason, or Suzuki must be applied against the lesser of the adjudged sentence or the maximum sentence provided for in the pretrial agreement. As both the majority and concurring opinions point out, Rock was unique as to its facts, as well as the remedy which the military judge awarded in order to provide effective relief.

The rule announced by the majority today allows an accused servicemember to negotiate a deal with his or her convening authority, and obtain a cap on the sentence, by arguing that he or she is entitled to the various credits discussed above. Cf. ___ MJ at (18) n.6. Having secured a pretrial agreement, the accused can and should then make the same presentation to the military judge or court members during the sentence proceedings. Now, having had two opportunities to argue for credits, the

4

accused will be entitled to the various credits, as the judge determines, and then have these credits subtracted from the lesser of the two sentences (adjudged or pretrial agreement).

The end result of the majority's holding will be the fashioning of new pretrial agreements with imaginative clauses by prosecutors and staff judge advocates -- and justifiably so, for a pretrial agreement is for the benefit of both parties. We will shortly see records of trial with pretrial agreements that are indexed to the amount of credit awarded in much the same way as economists index prices to inflation.

Military sentencing procedures place a duty on the Government to present evidence which may result in either a lessening of punishment or credit to an accused. See, e.g., RCM 1001(b). The burden should be on the defense to set out all of its evidence of unfair treatment or other treatment warranting credit in front of a sentencing authority. Then the sentencing authority can make an informed decision directing that credit be applied to the adjudged sentence where credit is due. Such a procedure will in no way hamper an accused's ability to further litigate an adjudged sentence's fairness before the convening authority (RCM 1106), or to argue sentence appropriateness to the Court of Criminal Appeals.